Dennis C. STREIFF, Plaintiff-Appellant-Petitioner,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Defendant-Respondent.

Supreme Court

*No. 82–599. Argued March 26, 1984.—Decided May 30, 1984.*

(Also reported in 348 N.W.2d 505.)

For the plaintiff-appellant-petitioner there were briefs by *Charles J. Howden* and *Waltz, Howden & Franken,* New Glarus, and oral argument by *Charles J. Howden.*

For the defendant-respondent there was a brief by *Charles R. Wellington* and *Kittelsen, Barry, Ross and Wellington,* Monroe, and oral argument by *Charles R. Wellington.*

SHIRLEY S. ABRAHAMSON, J.   This is a review of a published decision of the court of appeals, *Streiff v. American Family Mutual Insurance Company,* 114 Wis. 2d 63, 337 N.W.2d 186 (Ct. App. 1983), affirming the order of the circuit court for Green county, William C. Sachtjen, Reserve Circuit Judge, granting summary judgment to American Family Mutual Insurance Company on Dennis Streiff's claim for "extended earnings" under the standardized printed agency agreement in effect between American Family and Streiff.

The issue presented on review is a question of law, namely, the enforceability under sec. 103.465, Stats. 1981–82, of the provisions of the agency agreement requiring that Streiff forfeit his extended earnings if after termination of the agreement he engages in certain competitive practices.[1]  We conclude the restrictive provi-

---

[1] The court is asked to interpret a statute and a written contract. The interpretation of a statute is question of law. Since no extrinsic evidence was introduced to show the intent of the parties to the contract, the interpretation of the contract is a

sions are unenforceable as an unreasonable restraint of trade and reverse the decision of the court of appeals.

The facts of the case—to the extent that they affect the issue before the court—are not disputed. From 1967 until March 31, 1980, Streiff worked as an agent for American Family Mutual Insurance Company under American Family's standard Career Agent's Agreement. Streiff's residence and place of business were located in the village of New Glarus, Green county, Wisconsin; he operated primarily in northern Green and southern Dane counties. The agent's agreement, which was terminated as of April 1, 1980, provided that upon its termination Streiff was entitled to "extended earnings" (which in this case amounted to $33,830.45), if he complied with all of the terms and conditions of the agreement.

Immediately after termination Streiff publicly announced that he would no longer be working for American Family, that he had made arrangements with other insurers, and that he would continue to do business as an insurance agent. Streiff also communicated with his clients who had insurance with American Family and encouraged them to buy insurance with another insurer through him.

At the time of termination, Streiff had approximately 1,264 clients who had at least one policy with American Family, most of whom lived in Green and Dane counties. After termination, Streiff obtained the business of approximately 300 of these persons; the others apparently continued to do business with American Family.

---

question of law. *RTE Corp. v. Maryland Casualty Co.*, 74 Wis. 2d 614, 621, 247 N.W.2d 171 (1976). Both interpretations are questions of law. The effect of such a characterization is that on review this court need not defer to the determination of the circuit court or of the court of appeals. The circuit court and the court of appeals are in no better position to interpret the contract or the statute than this court is.

Following Streiff's public announcement and his communication with his American Family clients, American Family refused to pay Streiff his extended earnings, asserting that Streiff had failed to comply with two conditions of the agency agreement. American Family wrote Streiff as follows: "Because you have solicited our policyholders and associated yourself in a sales capacity with another insurer, you have forfeited your rights to extended earnings."[2]

American Family withheld payment of the extended earnings, apparently relying on two provisions of the agent's agreement: Section 5h and the fourth paragraph of section 5i, hereafter referred to as section 5i(4).

Section 5h of the agent's agreement prohibits the terminated agent from (1) soliciting and servicing American Family policyholders and (2) for a period of one year after termination and within a 50-mile radius of the agent's place of business, inducing, attempting to induce, or causing another to induce any policyholder to replace, lapse, or cancel any American Family policy. Section 5h provides as follows:

"After termination of this agreement, the agent shall refrain from further solicitation of policyholders for the company and from further servicing of policyholders of the company and for a period of one year after such

---

[2] In a later letter to Streiff's attorney, American Family again justified its position of not paying extended earnings on the ground that he had violated two provisions of the agreement, explaining:

"We have information that Mr. Streiff has violated his career agent's agreement date April 1, 1967, with American Family Mutual Insurance Company, American Family Life Insurance Company, and the American Standard Insurance Company of Wisconsin and has subsequently forfeited his rights to extended earnings from American Family Mutual Insurance Company. Mr. Streiff has not adhered to this agreement with our companies as set forth in section 5(h) (Rules After Termination) and section 5(i) (Extended Earnings)."

termination anywhere within the radius of 50 miles from the location of the agent's place of business under this agreement on the date of such termination shall not induce or attempt to induce or cause another or others to induce or attempt to induce any policyholder to replace, lapse, or cancel any policy of insurance written by the company."[3]

Section 5h is silent as to any penalty for its violation and does not refer to extended earnings. American Family and Streiff interpret section 5i, which is directly concerned with extended earnings, as providing that extended earnings will not be paid if the agent fails to comply with section 5h. The penalty for violation of section 5h is apparently set forth implicitly rather than explicitly in section 5i where the first paragraph states that if the agent's agreement is terminated, "provided . . . the agent has complied with all the terms and conditions of this section and of this entire agreement, the company . . . will pay the agent . . . extended earnings. . . ."

The second provision in the agent's agreement upon which American Family originally relied before litigation to deny Streiff his extended earnings was section 5i(4), which states that if the terminated agent associates himself or herself with or performs services for another insurer engaged in writing any of the kinds of insurance written by American Family, the terminated agent forfeits all rights to extended earnings. Section 5i(4) provides:

---

[3] The Career Agent's Agreement applies to agents working for American Family Mutual Insurance Company, American Life Insurance Company, and American Standard Insurance Company of Wisconsin. Not every provision of the agency agreement, however, applies to the agents of each insurer. Section 5h is entitled Rules After Termination and applies only to American Family and American Standard Insurance Company. Section 5i applies only to American Family. Apparently sections 5h and 5i were separately stated in the agent's agreement so that the application of the two sections to the particular companies could be shown.

"If, while being paid extended earnings, the agent associates himself in any sales or sales management capacity with another insurer engaged in writing any of the kinds of insurance written by the company, and if the agent performs services in any such capacity for such other insurer within any of the States of the United States in which the company operates as a licensed insurer, the agent, from and after the date of such association, shall forfeit all his rights to extended earnings otherwise thereafter payable by the company."

When the matter came to court, American Family no longer relied on section 5i(4) as a justification for not paying Streiff extended earnings. American Family concedes that sec. 5i(4), which apparently restricts a terminated agent's employment opportunities in the insurance industry throughout this country, is overly broad and unreasonable as to the territory described, violates sec. 103.465, Stats. 1981–82, and is unenforceable.

American Family now relies solely on section 5h as the justification for Streiff's forfeiting payment of extended earnings. American Family asserts that section 5h is a reasonable restraint and that sec. 103.465, Stats. 1981–82, does not mandate that section 5h be held invalid merely because section 5i(4) is invalid.

Sec. 103.465 provides as follows:

"A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint."

Before the enactment of sec. 103.465, this court followed the so-called blue pencil rule: if the terms of a

restraint were divisible the court struck the overly broad language of a restraint and enforced the valid restraints in the contract. See, *e.g., General Bronze Corp. v. Schmeling,* 208 Wis. 565, 243 N.W. 469 (1932) (geographical restraint found divisible and reasonable part upheld). Under the blue pencil rule, if the terms of a restraint were indivisible, that is, the contract itself furnished no basis for dividing the restriction into reasonable and unreasonable portions, the whole covenant was void if any part of the restriction was unreasonable. See, *e.g., Wisconsin Ice & Coal Co. v. Lueth,* 213 Wis. 42, 47, 250 N.W. 819 (1933).

In *Fullerton Lumber Co. v. Torberg,* 270 Wis. 133, 70 N.W.2d 585 (1955), this court departed from the blue pencil rule and enforced an invalid indivisible covenant insofar as it was reasonable, holding that "where the terms of a restrictive covenant, not otherwise invalid, restrain an employee beyond either the area or the time within which an employer needs protection from competition by him, it is the excess of territory or time that is contrary to public policy and void." *Id.* at 147. In *Fullerton Lumber* the court concluded that the 10-year period prescribed in a restraint was unreasonable. The court concluded the restraint for three years was reasonable and enforced the covenant for this period. See also *Fullerton Lumber Co. v. Torberg,* 274 Wis. 478, 80 N.W. 2d 461 (1957).

In 1957 after the second *Fullerton Lumber* case, the legislature adopted sec. 103.465 at the suggestion of a legislator who was critical of the *Fullerton Lumber* decision. The legislator wanted a restraint containing overly broad and invalid provisions to be struck down in its entirety; he apparently did not want the court to give effect to an unreasonable restraint to the extent it might be reasonable. The objection to the "Torberg" practice, as the legislator noted, is that it tends to en-

courage employers possessing bargaining power superior to that of the employees to insist upon unreasonable and excessive restrictions, secure in the knowledge that the promise will be upheld in part, if not in full. Macaulay, Supplementary Comments, in Danzig, *The Capability Problem in Contract Law*, 54, 61 (1977).[4]

American Family apparently urges that sec. 103.465 be read to prohibit only the blue-penciling of indivisible contracts but not the blue-penciling of divisible contracts. In other words, American Family interprets sec. 103.465 as overruling the *Fullerton Lumber* decision but not as overruling the common law rule applied before *Fullerton Lumber* permitting the court to blue pencil divisible contracts. Consistent with this interpretation American Family argues that the restraints in the agent's agreement are divisible, that section 5h is distinct and separate from section 5i(4), that section 5h, in and of itself, is not an unreasonable restraint, and that section 5h, regardless of section 5i(4), withstands scrutiny under sec. 103.465.

The court of appeals apparently accepted American Family's interpretation of the agent's agreement and of sec. 103.465.

The court of appeals interpreted the agent's agreement as providing for two covenants—section 5h and section 5i(4)—each triggered by different events. The court of appeals reasoned that sections 5h and 5i(4) come into play in different fact situations. Section 5h applies to the time period between termination of the agent's agreement and the commencement of payment

---

[4] American Family asserts that sec. 103.465 applies to *Fullerton II*, a case relating to employees' liability for damages, not to *Fullerton I*, an injunction case. See Macaulay, Supplementary Comments, in Danzig, *The Capability Problem in Contract Law*, 54, 61 (1977). This court has not ruled on this issue. In any event, in this case the employee does, in effect, become liable for money damages in the amount of the forfeited extended earnings.

of the extended earnings, and section 5i (4) applies after payment of the extended earnings has commenced. The court of appeals further reasoned that since Streiff had not yet begun to receive payment of extended earnings, section 5h was the operative provision and that 5i (4) never came into play in this case and need not be considered. Interpreted in this manner, the restraints by their terms were divisible, and the court of appeals concluded that sec. 103.465 would permit the reasonable provisions of section 5h to stand even though the provisions of section 5i (4) were admittedly unreasonable and void. Thus the court of appeals wrote:

"We conclude that the two clauses are distinct provisions with separate factual bases for their operation. Section 5h is a condition precedent to an agent's right to recover extended earnings. Streiff did not comply with the condition precedent because he induced American Family policyholders to switch coverage. Section 5i is both a condition subsequent to the right to recover extended earnings, and a condition precedent to their forfeiture. No inquiry is necessary into the validity of the conditions under which these payments could legitimately be discontinued. The invalidity of the conditions under which future payments, once begun, could be discontinued, has no relation to whether Streiff was entitled to those earnings." 114 Wis. 2d at 67.

We too begin our analysis by carefully scrutinizing the language of the contract. It is clear that sections 5h and 5i (4) constitute restraints against competition and are subject to sec. 103.465. See *Union Central Life Ins. Co. v. Balistrieri*, 19 Wis. 2d 265, 269, 120 N.W.2d 126 (1963); *Holsen v. M&I Bank*, 52 Wis. 2d 281, 285, 190 N.W.2d 189 (1971). We are not persuaded, however, that the court of appeals' interpretation of the agent's agreement is the correct one.

This court has adopted the following canons of construction of restraints against competition in employ-

ment contracts: These restrictions are *prima facie* suspect; they must withstand close scrutiny to pass legal muster as being reasonable; they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; they are to be construed in favor of the employee. *Zimmermann v. Brennan,* 78 Wis. 2d 510, 514, 515, 254 N.W.2d 719 (1977); *Gary Van Zeeland Talent, Inc. v. Sandas,* 84 Wis. 2d 202, 218–19, 267 N.W.2d 242 (1978).

Keeping these canons in mind, we conclude that sections 5h and 5i are indivisible and must be read together, not separately. The contract does not by its terms readily lend itself to being read to say that 5h applies only before payments have commenced and that 5i applies only after payments have commenced.

Section 5h, which is labeled as a rule of conduct, does not specify penalties. Section 5i describes the posttermination restraints on competition by the terminated agent and the consequences incurred by the terminated agent for violating these restraints.

The first paragraph of section 5i sets forth the conditions which an agent must satisfy before the agent is entitled to receive payments of extended earnings on termination of the agreement: The agent must comply with all the terms and conditions of the entire agreement. Thus section 5i requires as a condition for receiving payments of extended earnings that the terminated agent comply with section 5h.

Section 5i then addresses the terminated agent's right to continue to receive extended earnings after payment has begun. Sec. 5i(3) provides that if the agent fails to comply with all of the provisions of the agreement "particularly 5h, the agent shall immediately forfeit all rights to extended earnings otherwise payable thereafter." Sec. 5i(4) also provides for forfeiture of all

rights to extended earnings if the agent engages in certain competitive conduct after payment of extended earnings begins. (See sec. 5i(4) quoted at p. 607 above.)

As we read the agreement, sections 5h and 5i are not distinct, mutually exclusive, independent provisions that come into play in totally different fact situations so that the restraints are divisible. The two sections must be read together and both sections are applicable to Streiff in the facts of this case. When read together, sections 5h and 5i place substantially similar restraints on Streiff vis-a-vis American Family and make him subject to forfeiture of the extended earnings payments if he violates any of the restraints.

Sections 5h and 5i, like many other restraints, have three dimensions:

1. the activity dimension, that is, a description of the activities in which the employee is not to engage;

2. a time dimension, that is, the duration for which the employee is not to engage in the proscribed activity; and

3. a geographical dimension, that is, the territory in which the employee is not to engage in the restricted activity.

Such restraints against competition in the agent's agreement restrict several similar types of activities and set forth a different time and geographical restraint for the restricted activity. Upon termination of the agreement Streiff had to conduct himself in the following manner in order to have payment of extended earnings begin or continue:

1. Refrain from further solicitation of American Family policyholders. See section 5h.

2. Refrain from further servicing of American Family policyholders. See section 5h.

3. For a period of one year after termination, anywhere within a radius of fifty miles from New Glarus, Wisconsin, not induce or attempt to induce or cause an-

other or others to induce or attempt to induce any policy-holder to replace, lapse, or cancel any American Family policy of insurance. See section 5h.

4. Comply with all the terms and conditions of section 5i and of the entire agreement. See section 5i(1).

5. While being paid extended earnings, comply with all of the provisions of this agreement, particularly with 5h. See section 5i(3).

6. While being paid extended earnings, not associate in any sales or sales management capacity with another insurer engaged in writing any of the kinds of insurance written by American Family within any state in which American Family operates as a licensed insurer. See section 5i(4).

The clauses of the covenant are intertwined and the covenant must be viewed in its entirety, not as divisible parts.

Since we hold that sections 5h and 5i(4) constitute an indivisible covenant governing several similar types of activities and establishing several time and geographical restraints rather than two covenants (one a condition precedent and the other a condition subsequent), we need not decide whether a restraint which is reasonable as to activity, duration, and territory is enforceable under sec. 103.465, when the agreement includes a second restraint which is unreasonable as to activity, duration, and territory and is unenforceable under sec. 103.465.[5]

---

[5] In our previous cases this court has not elaborated on the relation of sec. 103.465 and the common law. The court has indicated that common laws rules are still applicable and our opinions have generally referred to both sec. 103.465 and the common law. Thus this court has said that the common law and sec. 103.465 require this court to make five distinct inquiries in evaluating the enforcement of a covenant not to compete. The covenant must (1) be necessary for the protection of the employer, that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; and (5) not be contrary

As an alternative argument, American Family asks us to apply equitable principles and uphold section 5h. The court of appeals apparently was influenced by considerations of equity. The court of appeals noted that it was "reasonable that American Family should not have to pay extended earnings to a former agent who solicits its policyholders." 114 Wis. 2d at 67.

Courts and commentators have engaged in debate over the equities of giving effect to reasonable aspects of restraints in a covenant.[6] An argument for giving effect to reasonable aspects of a restraint is the business need for restrictive covenants and the difficulty for larger businesses to tailor each covenant to the particular requirements of the individual employee. A principal argument against giving effect to reasonable aspects of a restraint is that the employer can fashion ominous covenants which affect the mobility of employees because of their *in terrorem* effect on employees who respect contractual obligations and their effect on competitors who do not wish to risk legal difficulties. At least where the restraint is indivisible, it is clear that our legislature has balanced the employer's business needs and the employee's interest in personal liberty and has, by the adoption of sec. 103.465, opted not to give effect even to so much of the covenant as would be a reasonable restraint. The legislature has in sec. 103.465 instructed the court as to the equities between the parties. Under sec. 103.465 if an indivisible covenant imposes an unreasonable restraint, the covenant is illegal, void, and unenforceable even as to so much of the covenant as

to public policy. *Lakeside Oil Co. v. Slutsky,* 8 Wis. 2d 157, 163, 98 N.W.2d 415 (1959); *Chuck Wagon Catering, Inc. v. Raduege,* 88 Wis. 2d 740, 751, 277 N.W.2d 787 (1979).

[6] See Blake, *Employee Agreements Not to Compete,* 73 Harv. L. Rev. 625 (1960).

would be a reasonable restraint. We abide by this determination in this case and hold the entire covenant void and unenforceable.

For the reasons set forth we reverse the decision of the court of appeals, reverse the order of the circuit court, and remand the matter to the circuit court for proceedings not inconsistent with this opinion.

*By the Court.*—Decision of the court of appeals is reversed; order of the circuit court reversed; cause remanded to the circuit court.