**NALCO CHEMICAL COMPANY**

v.

**HYDRO TECHNOLOGIES, INC.,
Daniel H. Girmscheid and
Thomas S. Broge.**

No. 92–C–412.

United States District Court,
E.D. Wisconsin.

Dec. 9, 1992.

Piette & Jacobson by Ronald L. Piette and William J. Richards, Milwaukee, WI, J. Michael Newton and Stephen N. Landsman, Nalco Chemical Corporate Counsel, Naperville, IL, for plaintiff.

Quarles & Brady by John A. Rothstein, Milwaukee, WI, for defendants.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

Presently before the court in the above-captioned action are two motions. The first motion, filed by the plaintiff, Nalco

Chemical Company [Nalco], is for partial summary judgment. It will be granted in part and denied in part. The second motion, filed by the defendants, is for leave to file a surreply to the reply brief filed by Nalco in support of its partial summary judgment motion; this motion will be denied.

## I. BACKGROUND

On April 16, 1992, Nalco filed a complaint against Hydro Technologies, Inc. [Hydro], Daniel H. Girmscheid and Thomas S. Broge [collectively, the defendants] seeking both damages and injunctive relief. Jurisdiction is based on diversity of citizenship and an amount in controversy in excess of $50,000 as required by 28 U.S.C. § 1332. All parties agree that Wisconsin law governs this action. *See Int'l Administrators v. Life Ins. Co. of North America,* 753 F.2d 1373, 1376, n. 4 (7th Cir.1985).

Mr. Girmscheid and Mr. Broge are former sales employees of Nalco and are presently employed by Hydro. Both Nalco and Hydro are companies engaged in the business of water treatment. Nalco and Hydro compete for customers in southeastern Wisconsin. While employed at Nalco, Mr. Girmscheid and Mr. Broge signed employment agreements with Nalco containing the following covenant (with emphasis added; bold type is in the original):

> 5. Employee will not, directly or indirectly, during his employment and for the period of two (2) years immediately after its termination, *engage or assist in the same or any similar line of business, competing with the line of business now or hereafter conducted or operated by Nalco during the term of Employee's employment by Nalco,* whether as consultant, employee, officer, director, or representative of such competing business, within the United States of America, **provided, however,** that in the event that the Employee's position with Nalco immediately prior to termination is that of *field representative, then the geographic area of this non-competition covenant shall be limited to that geographic area within the United States of America for which Employee was responsible at any time during the two year period immediately preceding termination,* and **provided, further,** that in the event that any court of competent jurisdiction shall find that the above restrictions are unreasonable with respect to their territorial extent and/or period of time involved, that such finding shall not invalidate any of the foregoing provisions with respect to the territorial extent or period of time which is reasonable, and said restrictions shall be construed to apply only to the territory and period of time so found to be reasonable by said court.

Nalco alleges that Mr. Girmscheid and Mr. Broge violated their employment agreements and, in particular, the above covenant [the ¶ 5 covenant], when they began working for Hydro and soliciting Nalco water treatment customers. Specifically, Nalco alleges that Mr. Girmscheid and Mr. Broge caused twenty-one Nalco customers to cease doing business with Nalco in favor of Hydro.

Nalco's original complaint consisted of the following seven claims against the defendants:

> (1) that Mr. Broge has committed a breach of nondisclosure and noncompete clauses in his employment agreement with Nalco;

> (2) that Mr. Broge violated the Uniform Trade Secrets Act, Wis.Stat. § 134.-90, by disclosing to and using on behalf of Hydro Technologies trade secrets that he acquired as an employee of Nalco;

> (3) that Mr. Girmscheid has committed a breach of nondisclosure and noncompete clauses in his employment agreement with Nalco;

> (4) that Mr. Girmscheid violated the Uniform Trade Secrets Act, Wis.Stat. § 134.90, by disclosing to and using on behalf of Hydro Technologies trade secrets that he acquired as an employee of Nalco;

> (5) that Hydro Technologies has committed intentional interference with a contract between Nalco and Mr. Girmscheid;

(6) that Hydro Technologies has committed intentional interference with a contract between Nalco and Mr. Broge; and

(7) that Hydro Technologies has violated the Uniform Trade Secrets Act, Wis. Stat. § 134.90, through the acquisition of Nalco's trade secrets through "improper means."

On April 17, 1992 Nalco filed a preliminary injunction motion to enjoin the defendants from misappropriating trade secrets from Nalco, to enjoin the defendants from doing business with Nalco customers who were once clients of Mr. Girmscheid and Mr. Broge when they were employed by Nalco and to enjoin Mr. Girmscheid and Mr. Broge from violating their Nalco employment agreements. On May 7, 1992, I granted Nalco's preliminary injunction motion in part finding, among other things, that Nalco had a likelihood of success on the merits with respect to its breach of contract claims against Mr. Girmscheid and Mr. Broge [claims (1) and (3) designated above]. *See Nalco Chemical Co. v. Hydro Technologies, Inc.*, 791 F.Supp. 1352 (E.D.Wis.1992); the defendants appealed that ruling, and that appeal is now pending.

On May 27, 1992 the defendants filed three counterclaims. The first counterclaim seeks a declaratory judgment that "Nalco's alleged covenant not to compete (and accompanying clauses) as drafted and/or applied to the defendants, is unreasonable, overly broad, vague and unenforceable." The second counterclaim alleges tortious interference with business relations by Nalco due to its alleged "unprivileged, improper and wrongful" contact with Hydro customers. The third counterclaim alleges that Nalco has violated Wis. Stats. § 100.20.

On June 24, 1992, Nalco amended its original seven-claim complaint. Nalco added four more claims each against Mr. Girmscheid and Mr. Broge and three more claims against Hydro for a total of eighteen claims against the defendants (six claims against each defendant). One of the three additional claims against Hydro alleged that Hydro intentionally interfered with Nalco's customer contracts. The defendants answered Nalco's amended complaint on July 24, 1992, and withdrew their third counterclaim against Nalco.

Nalco's summary judgment motion requests the following relief: (i) damages on its breach of contract claims against Mr. Girmscheid and Mr. Broge and permanent injunctive relief enjoining them from violating their Nalco employment agreements [claims (1) and (3) designated above]; (ii) damages on its two intentional interference of contract claims against Hydro and permanent injunctive relief enjoining Hydro from doing business with Nalco customers who were once clients of Mr. Girmscheid and Mr. Broge when they were employed by Nalco [claims (5) and (6) designated above]; and, (iii) damages and permanent injunctive relief on its claim against Hydro for intentional interference with Nalco's customer contracts added in Nalco's amended complaint. Nalco also seeks summary judgment against the defendants on their two remaining counterclaims. At this time, Nalco does not seek summary judgment on any of its Wis.Stat. § 134.90 claims [claims (2), (4) and (7) designated above] or on the remaining ten claims added in its amended complaint.

Since Nalco's filing of its summary judgment motion, Nalco entered into a stipulation with the defendants in which it agreed to withdraw all portions of its partial summary judgment motion seeking monetary damages. *See* Stipulation and Order dated August 4, 1992. Consequently, Nalco's summary judgment motion requests injunctive relief only as outlined above and the dismissal of the defendants' two remaining counterclaims.

## II. PRELIMINARY ISSUES

Two issues raised by the defendants should be addressed before considering Nalco's summary judgment motion. The first is whether, in light of the defendants appeal of the preliminary injunction ruling in this case, this court has jurisdiction to entertain Nalco's summary judgment motion. The second, advanced in the defendants' motion to file a surreply, is whether

the defendants are entitled to supplement the present record with a surreply to the reply brief filed by Nalco in support of its summary judgment motion.

## A.

The defendants argue that before this court can "render summary judgment on any issue concerning Nalco's covenant not to compete, this [c]ourt would necessarily have to rule upon the preliminary question of the underlying enforceability of that covenant." Presumably when the defendants refer to the enforceability of "Nalco's covenant not to compete" they specifically mean the enforceability of the ¶ 5 covenant. Because the issue of the enforceability of that covenant is before the court of appeals, the defendants contend that this court cannot, or at least should not, rule on Nalco's summary judgment motion.

■ Nalco states, quite correctly, that the pendency of an interlocutory appeal of a district court ruling granting a preliminary injunction does not divest the district court of jurisdiction. *See Chrysler Motors v. Int'l Union, Allied Indus. Workers of Am.*, 909 F.2d 248, 250 (7th Cir.1990); *Continental Training Services, Inc. v. Cavazos*, 893 F.2d 877, 880 (7th Cir.1990) (demonstrating that a district court may convert a preliminary injunction into a permanent injunction even though the preliminary injunction ruling has been appealed). Thus, I believe that the pendency of the defendants' appeal of my preliminary injunction ruling is not an obstacle to my deciding whether to grant summary judgment on *any* of the claims implicated in Nalco's partial summary judgment motion. Nor would it be an impediment to my granting permanent injunctive relief on any claim, should that become appropriate.

## B.

■ The defendants also seek leave to file a surreply to supplement the record which this court must review in considering Nalco's partial summary judgment motion. The defendants' contend they are entitled to file a surreply because Nalco "inserted new and erroneous arguments in its [summary judgment motion] reply brief that were never claimed or suggested in its opening papers." They argue that Nalco has violated Local Rule 6.01(c) of the Eastern District of Wisconsin that provides that reply briefs "shall be limited to matters in reply." Specifically, the defendants charge that Nalco's reply brief improperly puts forth arguments concerning this court's jurisdiction to resolve Nalco's summary judgment motion and that Nalco's reply brief "argues (for the first time) that there is no factual dispute over the question of whether the [d]efendants were factually assigned any alleged territory while at Nalco."

Nalco discussed the jurisdictional issue in its principal brief and the defendants' did so in their responsive brief. Nothing precludes Nalco from returning to that issue in their reply brief. Similarly, Nalco is entitled to address in its reply brief the factual issue of whether Mr. Girmscheid and Mr. Broge were assigned geographic territories by Nalco. In its opening brief Nalco contended this issue was not in dispute. The defendants challenged that contention in their responsive brief, and Nalco understandably chose to revisit that issue in its reply brief.

I find no impropriety in Nalco's actions and no merit in the defendants' motion to file a surreply. Thus, the defendants' motion to file a surreply will be denied and all documents submitted with that motion will be disregarded in the consideration of Nalco's summary judgment motion.

## III. SUMMARY JUDGMENT ANALYSIS

■ A motion for summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. Pursuant to Rule 56(c), only a "genuine issue" of "material fact" will defeat an otherwise proper motion for summary judgment. Material facts are those facts which, under the governing substantive law, "might affect the outcome of the

suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over such materials facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. *Id.*

■ Equitable relief can be granted on a motion for summary judgment. *See generally* 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 2731, at 299–301 (1983 & Supp.1992). However, a court can deny a summary judgment motion seeking equitable relief where "the judge desires a fuller development of the circumstances of the case." *Id.* at 302.

### A.

Nalco has moved for summary judgment on five of its eighteen claims [the five S/J claims] and seeks only injunctive relief on those claims. Motions for partial summary judgment are permissible. *See* Rule 54(b), Federal Rules of Federal Procedure ("When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims").

■ Many of the facts of this case are not in dispute. *See Nalco Chemical,* 791 F.Supp. at 1354–57 (summarizing the undisputed facts of this case). What the parties do vigorously dispute, however, is the enforceability of the ¶ 5 covenant that contains a geographic area restriction for "field representatives."

To determine Nalco's entitlement to summary judgment on the five Nalco S/J claims, the underlying issue of the enforceability of the ¶ 5 covenant would have to be resolved with finality. This is true because the enforceability of the ¶ 5 covenant is a condition precedent to Nalco's prevailing on the five Nalco S/J claims.

Specifically, Nalco's present motion for summary judgment on its breach of contract claims rests on its allegations that Mr. Girmscheid and Mr. Broge violated the ¶ 5 covenant by working in their former geographic areas of responsibility with Nalco and soliciting Nalco customer accounts. A breach of contract action would fail if the ¶ 5 covenant is unenforceable. Furthermore, intentional interference with contract requires the intentional and improper "interference with the performance of a contract." Restatement (Second) of Torts, § 766 (1979). If the ¶ 5 covenant is not enforceable, then Mr. Girmscheid and Mr. Broge would not have been obligated to abide by that provision; Hydro could not be found to have interfered with the performance of that clause if Mr. Girmscheid and Mr. Broge were not required to comply with it. Similarly, if the ¶ 5 covenant is not enforceable, Hydro could not have interfered with Nalco's customer contracts because Hydro would have been entitled to compete with Nalco for Nalco customers using its two new employees, Mr. Girmscheid and Mr. Broge.

■ Under Wisconsin common law there are five basic requirements necessary to uphold a covenant not to compete in an employment agreement. Specifically, the covenant must:

(1) be necessary for the protection of the employer, that is the employer must have a protectable interest justifying the restriction imposed on the activity of the employee; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive as to the employee; and (5) not be contrary to public policy.

*Streiff v. Family Mut. Ins. Co.,* 118 Wis.2d 602, 613–14 n. 5, 348 N.W.2d 505 (1984). Additionally, by statute:

A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or perfor-

mance as would be a reasonable restraint.

Wis.Stat. § 103.465 (1989–90).

The defendants' primary contention as to why this court should not grant Nalco summary judgment on the five Nalco S/J claims is that the ¶ 5 covenant is unenforceable as a *matter of law*. Consequently, the defendants urge that they, not Nalco, are entitled to summary judgment on the five Nalco S/J claims. *See Lett v. Magnant*, 965 F.2d 251 (7th Cir.1992) (court is entitled to grant summary judgment in favor of nonmoving party).

The defendants' principal effort to demonstrate the unenforceability of the ¶ 5 covenant is to attack directly the "field representative" geographic restriction in that covenant [the ¶ 5 territory clause]. The defendants contend the ¶ 5 territory clause is unreasonable as a matter of law as applied to the water treatment industry because it results in an overbroad restriction. Consequently, they contend the ¶ 5 covenant is unenforceable in its entirety pursuant to Wis.Stat. § 103.465.

In my preliminary injunction ruling I analyzed the ¶ 5 covenant under both the Wisconsin common law and Wis.Stat. § 103.465; in finding Nalco had a likelihood of success on the merits on its breach of contract claims, I concluded that Nalco also had a reasonable likelihood of demonstrating that the ¶ 5 covenant not to compete is enforceable under Wisconsin law. *See Nalco Chemical*, 791 F.Supp. at 1360. However, that conclusion was reached in circumstances in which Nalco had only to demonstrate "a reasonable likelihood of prevailing on the merits." *See West Allis Memorial Hospital, Inc., v. Bowen*, 852 F.2d 251, 253 (7th Cir.1988).

■ Determining the enforceability of a covenant not to compete under Wis.Stat. § 103.465 is a question of law, *see Streiff*, 118 Wis.2d at 603, 348 N.W.2d 505, as is, for the most part, the determination of the enforceability of a covenant not to compete under the five part Wisconsin common law test laid out in *Streiff*. *See, e.g., Fields Foundation, Ltd. v. Christensen*, 103 Wis.2d 465, 473, 309 N.W.2d 125 (Ct.App.

1981). However, Wisconsin courts have acknowledged that while the determination of the reasonableness of a covenant not to compete in an employment agreement is a question of law, that determination must often "be resolved with reference to the facts of the particular case." *See Geocaris v. Surgical Consultants, Ltd.* 100 Wis.2d 387, 388, 302 N.W.2d 76 (Ct.App.1981). *See also Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis.2d 460, 468, 304 N.W.2d 752 (1981) ("Whether the determination of the reasonableness of a noncompetition agreement is characterized as a question of law or one of fact, it still remains one which can be made only upon a consideration of factual matters.").

■ Under Wisconsin substantive law, the geographic constraint in a covenant not to compete is reasonable if "it is limited to the area actually served." *Pollack v. Calimag*, 157 Wis.2d 222, 238, 458 N.W.2d 591 (Ct.App.1990). Additionally, "[i]n Wisconsin a covenant [not to compete] is considered reasonable as to territory if … it is limited to the route or customers defendant actually services." *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis.2d 740, 754, 277 N.W.2d 787 (1979). In some circumstances, however, a geographic territory restriction can exceed the area actually served by an employee, but the validity of such a restriction can only be "established by examination of the particular circumstances which surround it." *Rollins Burdick Hunter of Wisconsin*, 101 Wis.2d at 468, 304 N.W.2d 752.

In my opinion, the defendants' contention that the ¶ 5 covenant is unenforceable should not be resolved with finality at this juncture because there remain genuine issues of material fact that preclude determining, as a matter of law, whether the ¶ 5 territory clause is reasonable and hence, whether the ¶ 5 covenant is *unenforceable*. Flowing from this conclusion is the corollary that Nalco cannot demonstrate the *enforceability* of the ¶ 5 covenant at this juncture because of these same genuine issues of material fact. Therefore, while the initial, curtain-raiser evidence produced at the preliminary injunction hearing con-

vinced me that Nalco had a likelihood of success, its present efforts to sew up a final judgment on the five Nalco S/J claims will not be granted. The fact that I awarded the plaintiff a preliminary injunction last May does not contradict this stance; the grant or denial of a final judgment should abide "a fuller development of the circumstances of the case." *See* Wright & Miller, *supra*.

## B.

Nalco also seeks summary judgment on the defendants' two pending counterclaims. The defendants' first counterclaim seeks a declaratory judgment that "Nalco's alleged covenant not to compete" is unenforceable. Presumably the defendants are referring to the ¶ 5 covenant. The defendants also brought a counterclaim alleging tortious interference with business relations by Nalco because of Nalco's alleged contact with Hydro customers.

I have concluded that there are genuine issues of material fact that preclude deciding whether the ¶ 5 territory clause is reasonable and thus whether the ¶ 5 covenant is enforceable under Wisconsin law. Consequently, Nalco is not entitled to summary judgment on the defendants' claim that the ¶ 5 covenant be found unenforceable.

■ Although the defendants entitle their second counterclaim "Tortious Interference with Business Relations," I will construe it as a claim that Nalco interfered with the performance of Hydro's contracts with its customers. I do so because tortious interference with business relations appears to be an obsolete cause of action. *See* Restatement (Second) Torts Division Nine Introductory Note (1979). Construing the defendants' second counterclaim in this manner is consistent with the allegations made by the defendants in their pleadings and does not prejudice the defendants. The claim of interference with the performance of contract is similar to a claim of tortious interference with business relations. *See* Restatement of Torts § 766 (1939); Restatement (Second) of Torts § 766 (1979).

■ Intentional interference with performance of a contract is defined as follows (emphasis added):

> One who intentionally and improperly interferes with the performance of a contract ... between another and a third person *by inducing or otherwise causing the third person not to perform the contract*, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (1979). Nalco has provided uncontradicted deposition testimony and affidavits which indicate that at no time did Nalco sales representatives tell any Hydro customer that they were prohibited from doing business with Hydro. Thus, Nalco has negated an essential element of the defendants' claim. The defendants have not effectively demonstrated the existence of a genuine issue of fact on this facet of the case; Nalco's motion for summary judgment dismissing the defendants' second counterclaim will be granted.

## ORDER

Therefore, IT IS ORDERED, that the plaintiff's motion for summary judgment on its claims of breach of contract against Mr. Girmscheid and Mr. Broge, on its two intentional interference of contract claims against Hydro and on its claim against Hydro for intentional interference with Nalco's customer contracts be and hereby are denied.

IT IS ALSO ORDERED that the plaintiff's motion for summary judgment on the defendants' counterclaim seeking a declaratory judgment be and hereby is denied.

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment on the defendants' counterclaim entitled tortious interference with business relations be and hereby is granted, and that counterclaim is dismissed.

IT IS FURTHER ORDERED that the plaintiff's request to certify this decision and order for immediate appeal be and hereby is denied.

IT IS FURTHER ORDERED that each party will bear its own costs in connection with these motions.