Frank D. Gillitzer Electric Co., Ltd.,
Plaintiff-Appellant,

v.

Marco L. Andersen, James J. Mickol, John J.
Mickol, Kyle Wolf and Kevin Ihde,
Defendants-Respondents.

Court of Appeals

*No. 2009AP939. Submitted on briefs December 1, 2009.
—Decided January 20, 2010.*

2010 WI App 31

(Also reported in 780 N.W.2d 542.)

754

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Dean P. Laing* of *O'Neil, Cannon, Hollman, DeJong S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Daniel J. Habeck* of *Cramer, Multhauf & Hammes, LLP* of Waukesha.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Frank D. Gillitzer Electric Co., Ltd. ("Gillitzer"), appeals the granting of summary judgment, dismissing all of Gillitzer's claims against its former employees: Marco L. Andersen, James J. Mickol, John J. Mickol, Kyle Wolf and Kevin Ihde (collectively referred to as the "former employees"). The circuit court granted the former employees' summary judgment motion on the grounds that the training reimbursement provision of the parties' "Educational And Non-Competition Agreement" (the "Agreement"), requiring the former employees to repay the cost of their apprenticeship program, was unenforceable because it was: (1) a restrictive covenant under Wis. Stat. § 103.465 (2007–08)[1] and (2) inextricably linked to the

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

invalid non-compete provision. We conclude that the reimbursement provision is enforceable because it is not textually linked or intertwined with the Agreement's concededly invalid non-compete provision. Accordingly, we reverse the order of the circuit court.

### BACKGROUND

¶ 2.   The following facts are undisputed. During their employment with Gillitzer, the former employees were given the opportunity to attend an apprenticeship program to become licensed electricians. The former employees each individually entered into and signed a written agreement with Gillitzer, providing as follows:

Educational And Non-Competition Agreement

In consideration for Frank Gillitzer Electric Co., Ltd[.] providing and paying for educational opportunities to the undersigned employee, as herein set forth, Frank Gillitzer Electric Co., Ltd. and said employee agree as follows:

1. Frank Gillitzer Electric Co., Ltd. agrees to pay for a five (5) year program of schooling for the employee through a state indentured program called ABC.

2. Employee agrees to maintain a passing grade and to follow all school rules and curriculum requirements.

3. In the event that employee fails to complete the schooling, fails to maintain passing grades, or leaves Frank Gillitzer Electric Co., Ltd.'s employment, either voluntarily or is terminated for cause, within four (4) years of completion of the schooling, employee agrees to reimburse Frank Gillitzer Electric Co., Ltd[.] for all costs incurred in providing the employee with said schooling.

4. Employee agrees not to be involved directly or indirectly as an owner, partner, stock holder, joint

venturer, director, or employee of any business that competes with Frank Gillitzer Electric Co., Ltd. in Milwaukee, Ozaukee, Washington, and Waukesha County for a period of [four] (4) years after completion of said schooling or after employee voluntarily leaves Frank Gillitzer Electric Co., Ltd.'s employment or is terminated for cause.

5. Employee further agrees as follows:

A. Not to solicit any of Frank Gillitzer Electric Co., Ltd.'s present or past customers for the same period set forth in paragraph four (4).

B. Not to solicit any of Frank Gillitzer Electric Co., Ltd.'s employees for the same period set forth in paragraph four (4).

C. Not to take or disclose to any third parties Frank Gillitzer Electric Co., Ltd.'s sales manuals, price lists, customer lists, and similar materials.

D. In the event the employee fails to perform its obligations hereunder, and Frank Gillitzer Electric Co., Ltd[.] refers such matter to an attorney, employee agrees to pay, any and all costs incurred by employer as a result of such action, including to the extent permitted by law, reasonable attorney[] fees.

(Uppercasing omitted.)

¶ 3. The former employees started the five-year apprenticeship program and each either withdrew from the program or was terminated by the program before completion. Each former employee continued to work for Gillitzer after leaving the program but eventually resigned voluntarily. After they left, Gillitzer sued for repayment of the training program costs under the Agreement. The former employees answered, denying liability. Gillitzer's complaint in this matter does not

757

seek enforcement of the Agreement's non-compete provision, which it concedes is too broad.

¶ 4. The parties filed cross-motions for summary judgment. The former employees argued that the training reimbursement provision was unenforceable under *Streiff v. American Family Mutual Insurance Co.*, 118 Wis. 2d 602, 348 N.W.2d 505 (1984). Gillitzer argued that the apprenticeship training reimbursement provision was valid and enforceable under *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, 319 Wis. 2d 274, 767 N.W.2d 898. The circuit court granted the former employees' motion for summary judgment, dismissing the complaint.[2] Gillitzer appeals.

## Standard Of Review

¶ 5. This appeal presents three matters for our review: (1) the circuit court's order; (2) the parties' contract; and (3) the construction of Wis. Stat. § 103.465. We review all three independently of the circuit court. Both the circuit court's order on cross-motions for summary judgment and the question of whether a restrictive covenant violates § 103.465 are questions of law which we review *de novo*. *See Star Direct*, 319 Wis. 2d 274, ¶ 18. As to the construction of the statute, § 103.465, we review statutory interpretations independently of the circuit court. *See Spiegelberg v. State*, 2006 WI 75, ¶ 8, 291 Wis. 2d 601, 717 N.W.2d 641.

---

[2] Gillitzer also sought attorney fees under the Agreement. The circuit court did not reach the attorney fees question based upon its decision that the training reimbursement provision was unenforceable.

## DISCUSSION

¶ 6.    The issue on appeal is whether the training reimbursement provision of the Agreement is enforceable. The parties frame the issue and analysis differently. The former employees argue that the Agreement is one restrictive covenant under WIS. STAT. § 103.465, with two intertwined provisions. They argue that Gillitzer has conceded on appeal that the Agreement's non-compete provision (paragraphs four and five) is restrictive and invalid. Thus, they argue that, because the otherwise reasonable training reimbursement provision (paragraphs one through three) is indivisible from the non-compete provision, the training reimbursement provision is unenforceable under *Streiff*.

¶ 7.    Gillitzer's position is that the Agreement consists of two individual covenants—one dealing with training program reimbursement and one dealing with non-compete restrictions. Gillitzer seeks enforcement of the training reimbursement provision only, conceding that the non-compete provision is a restrictive covenant and not disputing that the non-compete is invalid and unenforceable. Instead, Gillitzer argues that the training reimbursement provision is enforceable on its own because:   (1) it is not a restrictive covenant under WIS. STAT. § 103.465; and (2) even if it is a restrictive covenant, the training reimbursement provision is reasonable and divisible from the presumably invalid non-compete provision under federal cases and the recent Wisconsin Supreme Court opinion in *Star Direct*. Gillitzer contends that the *Streiff* divisibility test, which the circuit court relied on, is inapplicable after *Star Direct*, and that under the *Star Direct* test the training reimbursement provision is divisible and en-

forceable. We need not decide whether *Star Direct* revised the *Streiff* divisibility test because under the language of either case, the training reimbursement provision here is divisible and enforceable.

¶ 8.  Wisconsin has long disfavored restrictive covenants not to compete. *See Star Direct*, 319 Wis. 2d 274, ¶ 19 (citing *Streiff*, 118 Wis. 2d at 611). WISCONSIN STAT. § 103.465, adopted by the legislature in 1957, states that if a reasonable restraint not to compete is indivisible from an unreasonable restraint, the reasonable restraint becomes unenforceable. *See* 1957 Wis. Laws, ch. 444. More specifically, § 103.465 provides:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. *Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.*

(Emphasis added.)

¶ 9.  As we have seen, Gillitzer does not dispute that the non-compete provision in the Agreement is invalid and unreasonable. The former employees do not dispute that the training reimbursement provision by itself is reasonable. Indeed, if the reimbursement provision were standing alone as the parties' sole agreement it would not even fall under WIS. STAT. § 103.465 because it is not a "covenant by [an employee] . . . not to compete with his or her employer." Then, the narrow issue here, cast in the language of WIS. STAT. § 103.465, is whether the unreasonable, unenforceable non-

compete provision renders the reasonable training reimbursement provision unenforceable. The circuit court found that it does, under *Streiff*. We conclude that it does not, under either *Streiff* or *Star Direct*.

¶ 10. In *Streiff*, the case relied upon by the circuit court, the Wisconsin Supreme Court articulated the divisibility test for restrictive covenants, requiring a fact-intensive analysis of the language of the contract to determine whether the restrictive provisions are intertwined in such a way that they must be read together to determine the meaning of each. *See id.*, 118 Wis. 2d at 611–12. The court was dealing with one employment contract that contained two provisions regarding extended pay after termination of employment. *Id.* at 605. Under the provisions' terms, the employee was entitled to "extended earnings" after termination, so long as, among other things, the employee did not engage in prohibited competition with the former employer. *Id.* at 604–05. In determining that the two provisions of the non-compete were not divisible in *Streiff*, the court stated:

> As we read the agreement, sections 5h and 5i are not distinct, mutually exclusive, independent provisions that come into play in totally different fact situations so that the restraints are divisible. The two sections must be read together and both sections are applicable to Streiff in the facts of this case.

*Id.* at 612.

¶ 11. Gillitzer argues that the recent Wisconsin Supreme Court decision in *Star Direct* has created a new test for divisibility, namely textual linkage, and that under this new test the training reimbursement provision is divisible from the rest of the Agreement. In *Star Direct*, the court concluded that the reasonably

761

restrictive provisions of an agreement were divisible from an unreasonable and invalid provision in the same agreement because the provisions were not intertwined or textually linked. *See id.*, 319 Wis. 2d 274, ¶ 81. To determine whether two provisions are divisible, *Star Direct* stated that:

> [t]he foundational inquiry ... is whether, if the unreasonable portion is stricken, the other provision or provisions may be understood and independently enforced. This inquiry will be fact-intensive and depend on the totality of the circumstances. In the context of multiple non-compete provisions in a contract, indivisibility will usually be seen by an intertwining, or inextricable link, between the various provisions via a textual reference such that one provision cannot be read or interpreted without reference to the other. Restrictive covenants are divisible when the contract contains different covenants supporting different interests that can be independently read and enforced.

*Id.*, ¶ 78.

¶ 12.   Both cases describe the divisibility test in terms of whether the provisions must be read together to determine the meaning of either. *See Streiff*, 118 Wis. 2d at 612; *Star Direct*, 319 Wis. 2d 274, ¶ 78. Both acknowledge the fact-intensive nature of the divisibility analysis. *See id.* We do not decide, because it is not essential to our resolution of this appeal, whether the *Star Direct* test for divisibility is new and different from the test set forth in *Streiff*. We conclude that under the court's language in either *Streiff* or *Star Direct*, the training reimbursement provision is divisible from the non-compete provision.

¶ 13.   Whether viewed under the *Streiff* or *Star Direct* language, the training reimbursement provision here is clearly divisible from the non-compete clauses.

762

We are unpersuaded by the former employees' argument that the training reimbursement and non-compete provisions are intertwined like the provisions in *Streiff* because of the factual differences between the two provisions in *Streiff* and here. In *Streiff*, paragraphs 5h and 5i cross-referenced each other and contained overlapping subject matter. *See id.*, 118 Wis. 2d at 613 ("The clauses of the covenant are intertwined and the covenant must be viewed in its entirety, not as divisible parts."). The full meaning of one was not discernable without reading the other. *Id.* Such is not the case here. The two provisions in the Agreement do not need to be read together to discern the meaning of each.

¶ 14.    Paragraphs one, two and three (the training reimbursement paragraphs) can be independently read and understood:

1.  Frank Gillitzer Electric Co., Ltd. agrees to pay for a five (5) year program of schooling for the employee through a state indentured program called ABC.

2.  Employee agrees to maintain a passing grade and to follow all school rules and curriculum requirements.

3.  In the event that employee fails to complete the schooling, fails to maintain passing grades, or leaves Frank Gillitzer Electric Co., Ltd.'s employment, either voluntarily or is terminated for cause, within four (4) years of completion of the schooling, employee agrees to reimburse Frank Gillitzer Electric Co., Ltd[.] for all costs incurred in providing the employee with said schooling.

(Uppercasing omitted.) Paragraphs one and two contain Gillitzers' agreement to pay for the apprenticeship program and the employees' agreement to complete it

763

successfully. Paragraph three contains the reimbursement requirement, which is triggered by any one of three conditions: quitting the program, failing grades or leaving Gillitzer's employment. The paragraphs are clear by themselves. There is no need to read the non-compete provisions (paragraphs four and five) to discern the meaning of the training reimbursement requirement.

¶ 15. The non-compete provision is independent of the training reimbursement provision. Paragraphs four and five contain the restrictions on competition that are triggered by the employee leaving the company after taking the apprenticeship program money.

4. Employee agrees not to be involved directly or indirectly as an owner, partner, stock holder, joint venturer, director, or employee of any business that competes with Frank Gillitzer Electric Co., Ltd. in Milwaukee, Ozaukee, Washington, and Waukesha County for a period of [four] (4) years after completion of said schooling or after employee voluntarily leaves Frank Gillitzer Electric Co., Ltd.'s employment or is terminated for cause.

5. Employee further agrees as follows:

A. Not to solicit any of Frank Gillitzer Electric Co., Ltd.'s present or past customers for the same period set forth in paragraph four (4).

B. Not to solicit any of Frank Gillitzer Electric Co., Ltd.'s employees for the same period set forth in paragraph four (4).

C. Not to take or disclose to any third parties Frank Gillitzer Electric Co., Ltd.'s sales manuals, price lists, customer lists, and similar materials.

D. In the event the employee fails to perform its obligations hereunder, and Frank Gillitzer

Electric Co., Ltd[.] refers such matter to an attorney, employee agrees to pay, any and all costs incurred by employer as a result of such action, including to the extent permitted by law, reasonable attorney[] fees.

(Uppercasing omitted.)

¶ 16. The training reimbursement and non-compete provisions are not intertwined or dependent on each other for their meanings. The two provisions here are "distinct, mutually exclusive, [and] independent." *See Streiff*, 118 Wis. 2d at 612. Although they do share a common backdrop, in that they both are requirements of accepting the apprenticeship money, they impose separate requirements. Further, as Gillitzer points out in its brief, if either provision is stricken, the other is still independently understood; they are not "intertwine[ed] or inextricable." *See Star Direct*, 319 Wis. 2d 274, ¶ 78.

¶ 17. Additionally, unlike the provisions in *Streiff*, the two provisions in the Agreement do not share identical factual triggers. The shared, identical factual trigger was a basis for the court in *Streiff* finding that the provisions there were intertwined. *See id.*, 118 Wis. 2d at 612. Here the repayment requirement is triggered by any one of three things, two of which trigger repayment *even if the employee stays employed at Gillitzer*—quitting the program and receiving a failing grade. The third trigger is leaving the company before four years after completing the program. In the event of any of those three triggers, the employee is responsible to repay the program costs. On the other hand, the non-compete provision is triggered by the passage of four years after completion of the apprenticeship program or after the employee leaves the

company. Accordingly, the factual triggers for the two provisions are not identical.

¶ 18.  Because the two provisions can be separately read and understood, they are divisible. Unlike in *Streiff*, there is no cross-referencing, textual linkage and shared content within the paragraphs. Consequently, we conclude the training reimbursement provision here is enforceable.

*By the Court.*—Judgment reversed.