Rollins Burdick Hunter of Wisconsin, Inc.,
Plaintiff-Appellant-Petitioner,

v.

Kirk W. Hamilton and David B. Hays, Defendants-
Respondents.

Supreme Court

*No. 79–1473. Argued March 30, 1981.—Decided April 29, 1981.*

(Also reported in 304 N.W.2d 752.)

For the petitioner there were briefs by *Stephen T. Jacobs, William F. Flynn* and *Reinhart, Boerner, Van Deur-*

*en, Norris & Rieselbach, S.C.,* of Milwaukee, and oral argument by *Mr. Jacobs.*

For the respondents there was a brief by *Craig W. Nelson* and *Piette, Knoll & Nelson* of Milwaukee, and oral argument by *Craig W. Nelson.*

WILLIAM G. CALLOW, J. On this review we must consider, first, whether a noncompetition agreement which prohibits a former employee from soliciting clients of the former employer for a specified time is unreasonable as a matter of law for failing to contain a territorial limitation expressed in geographic terms; and second, whether such an agreement is unreasonable as a matter of law if it prohibits solicitation of all clients of the former employer as opposed only to those with whom the former employee had contact. The circuit court for Waukesha county, JOHN P. BUCKLEY presiding, granted judgment dismissing the employer's action to enforce the agreement, and the court of appeals affirmed.

The petitioner, Rollins Burdick Hunter of Wisconsin, Inc. (RBH), formerly known as Goetz-Haessler-James, Inc., is an insurance agency with its offices located in Milwaukee, Wisconsin. The respondents, Hamilton and Hays, are former RBH employees. In 1974 Hamilton and Hays executed identical agreements not to compete with Goetz-Haessler-James, Inc., the pertinent part of which provides:

"2. After Termination of Employment. If Employee terminates his employment with Agency for any reason or if Agency terminates his employment for cause, *Employee agrees* that he will not, directly or indirectly (through partners, agents, employers, employees or any other persons acting for Employee) for a period which is the lesser of (i) two years or (ii) Employee's period of employment from the date of this Agreement until termination, solicit, contact or otherwise do any competitive business with *any individual,* firm, corporation, partnership, organization or association *who was a customer*

*or client of Agency* during a period which is the lesser of (i) two years or (ii) Employee's period of employment from the date of this Agreement until termination. (Emphasis added.)

". . .

"4. Injunction. Employee, recognizing that irreparable injury will result to Agency and its business in the event of breach of this Agreement by Employee, agrees that in the event of breach of this Agreement in addition to any other remedies and damages available, Agency shall be entitled to an injunction restraining further violation of this Agreement by Employee, his partners, agents, employers, employees and all other persons acting for or with him."

Goetz-Haessler-James, Inc., became Rollins Burdick Hunter of Wisconsin, Inc., in March of 1979; and on June 29, 1979, Hamilton and Hays voluntarily terminated their employment with RBH. On July 27, 1979, prompted by its belief that Hamilton and Hays were soliciting insurance business from RBH clients, RBH commenced an action in circuit court seeking a permanent injunction against Hamilton and Hays prohibiting them from violating the terms of the noncompetition agreement. Shortly thereafter RBH filed a motion for a temporary injunction pendente lite. Hamilton and Hays moved to dismiss the action for failure to state a claim upon which relief can be granted. Affidavits were filed supporting and opposing the motion for a temporary injunction, and a hearing on that motion and the motion to dismiss was held in the circuit court on August 13, 1979.

In a decision dated August 28, 1979, the circuit court observed that RBH had a total of about six thousand clients and that Hamilton and Hays, as RBH employees, had knowledge of or contact with about one hundred seventy-five of those. Relying upon *Chuck Wagon Catering, Inc. v. Raduege,* 88 Wis.2d 740, 277 N.W.2d 787 (1979), the court concluded that the agreement was un-

reasonable as to its territorial limitation because its prohibition on the solicitation of RBH customers extended beyond those clients actually serviced by Hamilton and Hays. Further concluding that the agreement was therefore unreasonable as to Hamilton and Hays and thus unenforceable pursuant to sec. 103.465, Stats.,[1] the court denied RBH's motion for a temporary injunction and granted Hamilton's and Hays' motion to dismiss. The court of appeals, in a per curiam opinion, affirmed the circuit court, holding that the absence of an express geographic territorial limitation in the agreement was not in itself fatal, but that the territorial limitation even as expressed in terms of RBH clients was unreasonable in this case because it extended to RBH clients with whom Hamilton and Hays had had no contact. The court of appeals treated the circuit court's order as one granting summary judgment and concluded that none of the remaining factual issues would redeem the unreasonableness of the agreements. *Hunter of Wisconsin, Inc. v. Hamilton,* 97 Wis.2d 758, 295 N.W.2d 834 (Ct. App. 1980). We concur with the court of appeals that a geographic territorial limit is not essential to a valid covenant not to compete, but we cannot conclude on the basis of the record before us that the instant agreements are unreasonable as a matter of law, and therefore we reverse and remand for further proceedings.

---

[1] Sec. 103.465, Stats., provides:

"**103.465 Restrictive covenants in employment contracts.** A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint."

## I.

It appears as though the primary reason both courts below concluded the agreements in this case were unreasonable is that they prohibited Hamilton and Hays from soliciting RBH clients with whom they had had no contact during their employ at RBH. Before we address that issue, we must consider as a preliminary matter the contention of Hamilton and Hays that the agreements are per se invalid because they do not contain a territorial limitation expressed in geographic terms. The court of appeals rejected that argument and so do we.

Professor Blake, in his work on postemployment restraints, states:

"The traditional dimensions of a restraint have been those of duration and geographic area. The 'activity' dimension was not an issue in the earliest cases; a trade was a trade, set apart by separate guilds and the institution of apprenticeship, and there was no ambiguity in a promise not to 'exercise the trade of a baker' or 'enter into competition.' But division of labor and specialization now make it of the utmost importance that a restraint define carefully the activities in which the employee is not to engage. Thus, in modern cases the 'time' dimension remains critical, but the 'activity' restraint is, in many cases, replacing the 'area' restraint."

Blake, *Employee Agreements Not To Compete,* 73 Harv. L. Rev. 625, 675 (1960). In a proper case the preferability of a restraint expressed in terms of particular customers or particular activities over one expressed in geographic terms is evident. In this case had the agreements been drawn to prevent Hamilton and Hays from engaging in the insurance business in some specified area, as for example in Milwaukee county, the prohibition would necessarily have encompassed not only RBH clients in

that area but all potential clients. The limitation expressed in terms of particular clients or customers more closely approximates the area of the employer's vulnerability to unfair competition by a former employee and does not deprive the employee of legitimate competitive opportunities to which he is entitled. *See: Wolf & Co. v. Waldron*, 51 Ill. App.3d 239, 366 N.E.2d 603 (1977); *Hebb v. Stump, Harvey and Cook, Inc.*, 25 Md. App. 478, 334 A.2d 563 (1975); *Toch v. Eric Schuster Corporation*, 490 S.W.2d 618 (Tex. Civ. App. 1972); *Inland Rubber Corporation v. Helman*, 237 So.2d 291 (Fla. Dist. Ct. App. 1970); *Group Association Plans, Inc. v. Colquhoun*, 292 F. Supp. 564 (D.D.C. 1968). This court recognized the appropriateness of this kind of territorial limitation in *Chuck Wagon* where we said:

"In Wisconsin a covenant is considered reasonable as to territory if, like this covenant, it is limited to the route or customers defendant actually services." 88 Wis.2d at 754.

The respondents argue that an express geographic limitation is required by the terms of sec. 103.465, Stats., and this court's decision in *Holsen v. Marshall & Ilsley Bank*, 52 Wis.2d 281, 190 N.W.2d 189 (1971). Sec. 103.-465 provides that a covenant not to compete "within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal." Even if this statute is taken to set forth the essential characteristics of an enforceable agreement, we do not see in it any reference to geographic territory, and as we believe a limitation expressed in terms of a particular group of forbidden customers or clients is in the manner of a territorial limitation, the absence of a geographic territorial limitation is not necessarily fatal. *Holsen* held that a forfeiture provision in a profit-shar-

ing and retirement plan, under which any employee who engaged in a competing business would lose one-half his vested interest in the plan, ran afoul of sec. 103.465 because it contained neither area nor time limitations. The forfeiture clause under consideration in that case did not contain a limitation expressed in terms of specific customers or activities, and thus the case cannot be read to mandate a geographic territorial limitation where, as in this case, the territorial limitation is supplied in other terms. Accordingly, we hold that the territorial limitation of a restrictive covenant need not be expressed in geographic terms as an absolute prerequisite to a valid and enforceable agreement.

We come to the principal issue of the case which is whether the instant agreements are invalid per se because they purport to prohibit Hamilton and Hays from soliciting even RBH clients whom they had not serviced and with whom they had had no contact. Both courts below relied upon the above-quoted language in *Chuck Wagon* in finding the instant agreements unreasonably broad. The trial court seemed to view *Chuck Wagon* as announcing a per se rule automatically invalidating any agreement whose restraint was broader than the actual customers serviced by the employee restrained. The court of appeals appears to have entertained the possibility that an agreement could be reasonable even if it extended beyond the scope of direct customer contact, but it rejected RBH's efforts to distinguish *Chuck Wagon* from this case and found no other facts which would render the scope of restraint in these agreements reasonable.

RBH argues that, even if *Chuck Wagon* is taken to establish a rule of thumb for gauging the reasonableness of the scope of postemployment restraints, it should be limited to the facts of that case, that is, to situations where the employees being restrained are route salesmen or other lower-echelon employees who are not, by

virtue of their position, privy to sensitive information involving customers with whom they do not necessarily have contact. RBH argues that in this case the employees, particularly Hamilton who was vice president, had access to the files containing important information concerning all RBH clients, and thus prohibiting them from contacting RBH clients with whom they had no actual contact is not necessarily unreasonable.

In this state "a restrictive covenant not to compete after a term of employment should be reasonably necessary for the protection of the legitimate interests of the employer and at the same time should not be oppressive and harsh on the employee or injurious to the interests of the general public." *Lakeside Oil Co. v. Slutsky,* 8 Wis.2d 157, 162, 98 N.W.2d 415 (1959). A flat rule invalidating all restrictive covenants whose scope exceeded a former employee's actual customer contact would amount to a declaration that it is never reasonably necessary to protect an employer against the improper use of information about customers with whom the employee did not have actual contact. But as we have indicated, what is reasonable varies from case to case, and what may be unreasonable in one instance may be very reasonable in another. *See: Wisconsin Ice & Coal Co. v. Lueth,* 213 Wis. 42, 45, 250 N.W. 819 (1933). Thus a per se rule offends the notion that the validity of a restrictive covenant is to be established by examination of the particular circumstances which surround it. Whether the determination of the reasonableness of a noncompetition agreement is characterized as a question of law or one of fact, it still remains one which can be made only upon a consideration of factual matters.

This case involves allegations that Hamilton and Hays had access to vital information about customer

names, policy data, and expiration dates which was not limited to those clients whom they serviced personally. Whether this sort of information may be considered "trade secrets" is uncertain. *See: Gary Van Zeeland Talent, Inc. v. Sandas,* 84 Wis.2d 202, 267 N.W.2d 242 (1978); *American Welding & Engineering Co. v. Luebke,* 37 Wis.2d 697, 155 N.W.2d 576 (1968); *Abbott Laboratories v. Norse Chemical Corp.,* 33 Wis.2d 445, 147 N.W.2d 529 (1967). But that it may be a proper subject of protection by restrictive covenant is beyond dispute. *See: Rhoads v. Clifton, Gunderson & Co.,* 89 Ill. App.3d 751, 411 N.E.2d 1380 (1980); *National Oil Service of Louisiana, Inc. v. Brown,* 381 So.2d 1269 (La. App. 1980); *Bobbitt v. National Comp. Associates,* 597 S.W.2d 28 (Tex. Civ. App. 1980); *National Starch and Chemical Corp. v. Newman,* 577 S.W.2d 99 (Mo. App. 1978); *Cascade Exchange, Inc. v. Reed,* 278 Ore. 749, 565 P.2d 1095 (1977) (In Banc); *North Pacific Lumber Co. v. Moore,* 275 Ore. 359, 551 P.2d 431 (1976); 12 Business Organizations, Milgrim, *Trade Secrets,* Secs. 2.09[7], 2.09[8], and Ch. 3 (1980); Annot., 28 A.L.R.3d 7 (1969). In many instances involving route salesmen or other non-management employees, the scope of actual customer contact may serve as a guide to what scope of restriction is reasonable. *See: Chuck Wagon Catering, Inc. v. Raduege, supra; Lakeside Oil Co. v. Slutsky, supra; Wisconsin Ice & Coal Co. v. Lueth, supra; Milwaukee Linen Supply Co. v. Ring,* 210 Wis. 467, 246 N.W. 567 (1933); *Eureka Laundry Co. v. Long,* 146 Wis. 205, 131 N.W. 412 (1911). But the customer contact notion takes on a new dimension where the person involved is a high-level management employee who is apt to have access to confidential business information. Blake, *supra* at 661; *see also:* Hutter, *Drafting Enforceable Employee Non-Competition Agreements to Protect Confidential Business Information: A Lawyer's Practical Approach to*

*the Case Law*, 45 Alb. L. Rev. 311 (1981). Thus we do not believe the determination of whether a restraint of this type is reasonably necessary for the protection of an employer can be intelligently made without a consideration of the nature and character of such information, including the extent to which it is vital to the employer's ability to conduct its business, the extent to which the employee actually had access to such information, and the extent to which such information could be obtained through other sources. As to whether the restraint is unreasonable to the employee, we do not see how such a determination could be made without considering additionally the extent to which the restraint on competition actually inhibits the employee's ability to pursue a livelihood in that enterprise, as well as the particular skills, abilities, and experience of the employee sought to be restrained. These, of course, are not exhaustive, since the very essence of what is reasonable involves the totality of the circumstances.

## II.

We, as did the court of appeals, view the trial court's order as one granting summary judgment. The purpose of the summary judgment procedure is not to try issues of fact but to avoid trials where there is nothing to try. *Maynard v. Port Publications, Inc.*, 98 Wis.2d 555, 562–63, 297 N.W.2d 500 (1980). There we stated that "[t]he moving party must 'establish a record sufficient to demonstrate to the satisfaction of the court that there is no triable issue of material fact on any issue presented' " and that "[a]ny reasonable doubts as to the existence of a factual issue must be resolved against the moving party." *Id.* Although the trial court's decision made no mention of the absence of triable issues of fact, we gather from its dismissal of the action it concluded there were none. The court of appeals recognized that

there may be unresolved factual issues but concluded that none of them were material in that the unreasonableness of the agreements would not be affected by their resolution one way or the other. The court of appeals concluded that the "mere possibility" that Hamilton and Hays may have had access to the master files, and therefore to the policy expiration dates of all RBH clients, is an insufficient basis upon which to uphold the covenants. Had there been a trial in this case, and had the evidence adduced still amounted to the same "mere possibility" alluded to by the appellate court, in the absence of any other strong countervailing factors we might be inclined to agree. But there was no trial; in fact, the record before us is comprised of the summons and complaint, five affidavits (submitted in connection with RBH's request for temporary injunctive relief), and briefs and arguments of counsel. There are no depositions, no interrogatories, no admissions, no trial record; in short, it is a very meager factual record upon which to make such a determination.

We express no opinion whether either agreement in question is reasonable and thus enforceable, or unreasonable and thus unenforceable. We only conclude that on the strength of the record it is not possible to make that determination, as a matter of law, one way or the other. Particularly where, as here, the ultimate issue—the reasonableness of the agreements—turns upon the totality of the facts and circumstances surrounding them, the parties must be given a full opportunity to develop the necessary evidentiary record. *See, e.g., Waterfield Mortgage Co., Inc. v. O'Connor,* 172 Ind. App. 673, 361 N.E.2d 924, 926–27 (1977). Accordingly, under our oft-repeated formula for analyzing summary judgment cases, *see, Maynard v. Port Publications, Inc., supra,* and cases cited therein, we conclude that genuine issues of ma-

terial fact remain relative to the reasonableness of these agreements, and thus summary judgment at this stage of the action was improper.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings in accordance with this opinion.