**GENZYME CORPORATION, Plaintiff,**

v.

**Charles BISHOP, Keith Crawford, Eric Messner, Proventiv Therapeutics LLC, and Cytochroma, Inc., Defendants.**

No. 06–C–428–S.

United States District Court,
W.D. Wisconsin.

Oct. 31, 2006.

James R. Cole, Quarles & Brady, Madison, WI, for Defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Genzyme Corporation commenced this civil action against defendants Charles Bishop, Keith Crawford, Eric Messner, ProventIV Therapeutics LLC, and Cytochroma, Inc. seeking both monetary and injunctive relief. Plaintiff alleges misappropriation and unjust enrichment against all defendants. Additionally, plaintiff alleges numerous claims against defendants Charles Bishop, Keith Crawford and Eric Messner. Such claims are as follows: (1) breach of contract based on alleged violations of a rights to intellectual property provision contained within said defendants' Employee Agreements, (2) breach of contract based on alleged violations of a promise to return company property provision contained within said agreements, (3) breach of contract based on alleged violations of a covenant not to compete contained within said agreements, (4) breach of duty of loyalty; and (5) conspiracy. Finally, plaintiff alleges usurpation of corporate opportunity against defendant Charles Bishop. Jurisdiction is based on 28 U.S.C. § 1332. The matter is presently before the Court on defendants Bishop, Crawford, and Messner's motion to dismiss counts three through eight of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the purpose of

---

1. Said defendants moved to dismiss counts two through seven of plaintiff's original complaint. However, plaintiff filed an amended complaint after defendants submitted their reply brief in support of their motion to dismiss. Count two of plaintiff's amended complaint now alleges unjust enrichment while counts three through eight allege the breach of contract and tort claims which are the subject of defendants' motion. Plaintiff filed its amended complaint before the October 10, 2006 deadline to amend pleadings without further

this motion, the following facts relevant to defendants' motion are undisputed.

## BACKGROUND

Plaintiff Genzyme Corporation is a Massachusetts corporation with its principal place of business in Cambridge, Massachusetts. Plaintiff is a biotechnology company whose products and services are focused on rare inherited disorders, kidney disease, orthopedics, transplant and immune disease, cancer, and diagnostic testing. On July 1, 2005 plaintiff completed its acquisition of Bone Care International (hereinafter Bone Care) a company specializing in Vitamin D products.

Defendant Charles Bishop a is citizen of the State of Wisconsin residing in Mt. Horeb, Wisconsin. He is Bone Care's former President, Chief Executive Officer, Director and Chief Scientific Officer. Defendant Keith Crawford is likewise a citizen of the State of Wisconsin residing in Fitchburg, Wisconsin. He is Bone Care's former Senior Director of Medical Marketing and Scientific Affairs. Defendant Eric Messner is a citizen of the State of Illinois residing in Lake Forest, Illinois. Defendant Messner served as Bone Care's Director of Marketing.

In March of 2005 defendant Bishop became Bone Care's Executive Vice–President and Chief Scientific Officer. On March 18, 2005 defendant Bishop entered into an Employee Agreement with Bone Care which became effective on April 25, 2005. Said agreement contained a covenant not to compete which provides in relevant part as follows:

> That during the term of his ... employment by Bone Care and for a period of six months after the termination of such employment ... Employee will not directly or indirectly own, operate, manage, consult with regarding matters related to those exposed to during your employment with Bone Care, control, participate in the management or control of, be employed by in a position comparable to that occupied during your employment with Bone Care, or maintain or continue any interest whatsoever in any enterprise that competes with Bone Care in the development and or sale of vitamin D compounds as therapies for certain diseases in competition with Bone Care in pharmaceutical research and development ...

Additionally, said agreement contained a return of company property provision which provides as follows:

> Employee agrees that, upon termination, he [ ] will not take or retain, without written authorization from an officer of Bone Care, any papers, lists, credit cards, electronic data files, patent applications, regulatory documents, standard operating procedures, assay methods, data, chemical syntheses, product development plans, equipment, samples, marketing plans, customer lists, or any other documents or copies thereof of any kind of belonging to or furnished by Bone Care or representative of his [ ] employment with Bone Care. All written materials and other property of Bone Care shall be returned upon termination.

Finally, said agreement contained a rights to intellectual property provision which provides in relevant part as follows:

> The Employee will disclose promptly and fully to Bone Care all inventions, improvements, or discoveries made or conceived by the employee, solely or jointly with others, in the course of such employment or with the use of Bone

order of the Court. Accordingly, plaintiff's amended complaint controls this action and the Court will decide defendants' motion to dismiss based on facts alleged in plaintiff's amended complaint.

Care's time, material, or facilities, or related to or suggested by the business or investigations of Bone Care, or of the companies it owns or controls at the time of such inventions. The employee will assign to Bone Care all rights, title, and interest in any inventions, improvements or discoveries that he ... may conceive of or first actually reduce to practice during his ... employment with the company....

Since Employee is to assign to Bone Care inventions which he ... may conceive or first actually reduce to practice while in the employ of the company, he ... will list at the end of this Agreement all those inventions which are owned by the Employee at this time and which should be brought to the attention of the Company to avoid future misunderstandings as to ownership....

Additionally, defendants Crawford and Messner entered into Employee Agreements containing identical provisions. When plaintiff acquired Bone Care it became the successor to said agreements.

In July and August of 2005 defendants Bishop, Crawford, and Messner (hereinafter collectively referred to as individual defendants) all terminated their employment with Bone Care/Genzyme.[2] In September of 2005 the individual defendants formed defendant Proventiv Therapeutics LLC (hereinafter Proventiv.) Defendant Proventiv is a Delaware limited liability company with its principal place of business in Madison, Wisconsin.

In June of 2006 the individual defendants sold defendant Proventiv to defendant Cytochroma, Inc. (hereinafter Cytochroma.) Defendant Cytochroma is a Canadian corporation with its headquarters in Markham, Ontario. Defendant Cytochroma purchased defendant Proventiv in part for its drug pipeline and patent applications covering new Vitamin D uses. The individual defendants currently serve as defendant Cytochroma's executive officers.

On August 8, 2006 plaintiff commenced this action. Defendants filed both their answer and their motion to dismiss on September 1, 2006. On October 10, 2006 plaintiff filed an amended complaint. As is relevant to the present motion, plaintiff's amended complaint alleges various breach of contract claims against the individual defendants based on alleged violations of provisions of their Employee Agreements. Additionally, plaintiff's complaint alleges numerous tort claims against the individual defendants. Specifically, count six of plaintiff's complaint alleges breach of duty of loyalty against all three individual defendants. Said count alleges in relevant part as follows:

... [The individual defendants] each breached their duties by engaging in competing, self-dealing activities, while employed, and by misappropriating [plaintiff's] confidential or proprietary non-trade secret information in order to form what Bishop called a 'better Vitamin D company than Bone Care' in an effort to compete with [plaintiff.] ... These competing, self-dealing activities include, but are not limited to, (1) meeting with each other and their attorney to discuss plans to develop a new company that would comp[ ]ete with [plaintiff]; (2) using time in Boston, Massachusetts, during which they were supposed to be working on the integration of Bone Care and [plaintiff,] to meet with potential supporters or advisors of the company they intended to form in order to compete with plaintiff; and (3) misappropri-

---

**2.** For the sake of clarity the Court will refer to Bone Care/Genzyme as plaintiff throughout the course of this memorandum and order. References to Bone Care individually will continue to be designated as Bone Care.

ating [plaintiff's] business and marketing plans, contact information for "key opinion leaders" in the Vitamin D industry, equipment, electronic files, and other materials....

Count seven of plaintiff's complaint alleges usurpation of corporate opportunity solely against defendant Bishop. Said count alleges in relevant part as follows:

... Bishop's fiduciary duty of loyalty included, among other things, the obligation to refrain from using his position as a corporate insider to gain personally from business opportunities belonging to Bone Care. Bone Care had an opportunity to develop and market Vitamin D products and uses that were based upon proprietary development plans, some of which may or may not be trade secrets. Bone Care had both an interest and an expectancy in its ability to pursue this opportunity.... Bishop has seized this opportunity for his own benefit ... and, in doing so, has breached his fiduciary duty of loyalty to Bone Care....

Finally, count eight of plaintiff's complaint alleges conspiracy against all three individual defendants. Said count alleges in relevant part as follows:

... [D]efendants Bishop, Crawford, and Messner ... formed a conspiracy to breach their duties to [plaintiff,] misappropriate confidential and/or proprietary, non-trade secret information, and unjustly retain the benefits of possessing, selling, and otherwise using [plaintiff's] confidential, non-trade secret information and materials..... [D]efendants Bishop, Crawford, and Messner did, in furtherance of their unlawful conspiracy, establish Proventiv for the purpose of using and exploiting confidential, non-trade secret information belonging to Bone Care.... [Said] defendants ... used and exploited Bone Care's confidential, non-trade secret information in competition with Bone Care.... [Said] defendants ... did, in furtherance of their unlawful conspiracy, disclose Bone Care's confidential, non-trade secret information to Cytochroma....

Additional facts relevant to the Court's analysis will be discussed throughout the course of this memorandum.

## MEMORANDUM

Defendants Bishop, Crawford, and Messner assert several of the restrictive covenants contained within their Employee Agreements are overbroad and unenforceable as a matter of law. Additionally, defendants assert said agreements fail in their entirety because the restrictive covenants contained within them are all interdependent and indivisible. Accordingly, defendants argue their motion to dismiss plaintiff's breach of contract claims should be granted. Additionally, defendants argue their motion to dismiss plaintiff's tort claims should be granted because said claims are based on the alleged misappropriation of plaintiff's purported trade secrets. Accordingly, defendants argue these tort claims are preempted by the Wisconsin Uniform Trade Secrets Act.

Plaintiff asserts the Court must determine the reasonableness of the covenants contained within the individual defendants' Employee Agreements based on the totality of circumstances which it asserts cannot be judged on the pleadings alone. Accordingly, plaintiff argues its complaint states claims for breach of contract and as such defendants' motion to dismiss such claims should be denied. Additionally, plaintiff asserts its tort claims based on misappropriation of confidential and proprietary information are not preempted by the Wisconsin Uniform Trade Secrets Act unless such information constitutes a trade secret. As such, plaintiff asserts the Court does not yet possess the necessary

evidence to determine whether such information indeed constitutes a trade secret. Accordingly, plaintiff argues defendants' motion to dismiss its tort claims should be denied.

### A. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief can be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997)(*citing* Fed.R.Civ.P. 12(b)(6)). Dismissal is appropriate only if it appears beyond doubt that plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (citations omitted).

▮ When deciding a motion to dismiss for failure to state a claim courts are generally restricted to an analysis of the complaint. *See Hill v. Trustees of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir.1976)(*citing Grand Opera Co. v. Twentieth Century–Fox Film Corp.*, 235 F.2d 303 (7th Cir. 1956)). However, documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to its claim. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir.2002) (*citing Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994)). Accordingly, a court may consider such documents when deciding a motion to dismiss without converting said motion into one for summary judgment under Rule 56. *Id. (citing Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir.1998)).

Additionally, courts will accept all well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977–978 (7th Cir.1999)(*quoting Mallett v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1248 (7th Cir.1997)). However, courts are not required to accept assertions of law or unwarranted factual inferences contained within the complaint when deciding a motion to dismiss. *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir.2005) (citation omitted). With the applicable standard of review in place, the Court will address defendants' motion to dismiss by proceeding to discuss plaintiff's breach of contract and tort claims in turn.

### B. Defendants' Motion to Dismiss Counts Three though Five of Plaintiff's Amended Complaint.[3]

Defendants assert several of the restrictive covenants contained within the individual defendants' Employee Agreements are overbroad and unenforceable as a matter of law. Additionally, defendants assert said agreements fail in their entirety because the restrictive covenants contained within them are all interdependent and indivisible. Accordingly, defendants argue their motion to dismiss plaintiff's breach of contract claims should be granted.

▮ It is important to note that all parties agree Wisconsin law governs this controversy. Generally, Wisconsin law disfavors covenants not to compete. *Equity Enterprises, Inc. v. Milosch*, 2001 WI App 186, ¶ 12, 247 Wis.2d 172, 183, 633 N.W.2d 662, 668 (citation omitted). This is because Wisconsin law favors the mobility of workers and "therefore, a contract that

---

**3.** Defendants moved to dismiss counts two through four of plaintiff's original complaint which were plaintiff's breach of contract claims. However, count two of plaintiff's amended complaint alleges unjust enrichment and counts three through five allege breach of contract. Accordingly, the Court will apply defendants' arguments contained within their motion to dismiss to counts three through five of plaintiff's amended complaint.

operates to restrict trade or competition is prima facie suspect." *Mut. Serv. Cas. Ins. Co. v. Brass,* 2001 WI App 92, ¶ 6, 242 Wis.2d 733, 738, 625 N.W.2d 648, 652 (citation omitted). Accordingly, such restrictions must withstand close scrutiny to pass legal muster as being reasonable; they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires. *Streiff v. Am. Fam. Mut. Ins. Co.,* 118 Wis.2d 602, 611, 348 N.W.2d 505, 510 (1984) (citations omitted). Additionally, such restrictions are to be construed in favor of the employee. *Id.* The legislature codified this policy in Wis. Stat. § 103.465 which provides as follows:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Accordingly, to be enforceable a restrictive covenant must: (1) be necessary for the protection of the employer, (2) provide a reasonable time restriction, (3) provide a reasonable territorial limit, (4) not be harsh or oppressive as to the employee; and (5) not be contrary to public policy. *Fields Found., Ltd. v. Christensen,* 103 Wis.2d 465, 470, 309 N.W.2d 125, 128 (Wis. Ct.App.1981) (citation omitted). However, the "validity of a restrictive covenant is to be established by examination of the particular circumstances which surround it." *Rollins Burdick Hunter of Wis. v. Hamilton,* 101 Wis.2d 460, 468, 304 N.W.2d 752, 756 (1981). Accordingly, whether the rea-

sonableness determination is characterized as either a question of law or one of fact "it still remains one which can be made only upon a consideration of factual matters." *Id.*

The Court will begin its analysis by addressing count four of plaintiff's complaint. Count four alleges breach of contract against all three individual defendants based on alleged violations of the return of company property provision contained within their Employee Agreements. Said provision provides as follows:

> Employee agrees that, upon termination, he [ ] will not take or retain, without written authorization from an officer of Bone Care, any papers, lists, credit cards, electronic data files, patent applications, regulatory documents, standard operating procedures, assay methods, data, chemical syntheses, product development plans, equipment, samples, marketing plans, customer lists, or any other documents or copies thereof of any kind of belonging to or furnished by Bone Care or representative of his [ ] employment with Bone Care. All written materials and other property of Bone Care shall be returned upon termination.

Defendants argue said provision is invalid because it is incorporated into a punitive and void liquidated damages clause which is likewise contained within the individual defendants' Employee Agreements. However, the Court need not address this argument because it finds the return of company property provision is not a restrictive covenant which makes it divisible from any allegedly invalid clause.

The return of company property provision does not mention any post-employment restrictions on said individual defendants' future employment. The explicit purpose of Wis. Stat. § 103.465 is to invalidate covenants that impose unreasonable

restraints on employees. *Heyde Cos., Inc. v. Dove Healthcare, LLC,* 2002 WI 131, ¶ 13, 258 Wis.2d 28, 36, 654 N.W.2d 830, 834. Contractually guarding a party's operating procedures, equipment, or customer lists does not impose an unreasonable restraint on its employees.

■ Additionally, the public policy underlying Wis. Stat. § 103.465 is that Wisconsin law favors the mobility of workers. *Mut. Serv. Cas. Ins. Co.,* at ¶ 6, 242 Wis.2d at 738, 625 N.W.2d at 652 (citation omitted). Compliance with a contractual obligation to return property already belonging to an employer does not violate public policy concerning employee mobility. Accordingly, the Court finds that the promise to return company property provision is not a restrictive covenant subject to the requirements of Wis. Stat. § 103.465 which makes it divisible from the allegedly invalid liquidated damages clause. *Fields Found., Ltd.,* at 476–477, 309 N.W.2d at 131.

■ However, such a conclusion does not end the Court's inquiry because it must also determine whether count four states a claim for breach of contract. Plaintiff alleges the individual defendants "took or retained ... Bone Care's product development plans, Key Opinion Leader ... contact information, equipment, electronic files, and other materials." When the Court takes plaintiff's allegations as true and draws all reasonable inferences in plaintiff's favor it finds that it is not beyond doubt that plaintiff cannot prove any set of facts in support of its breach of contract claim which would entitle it to relief. *Conley,* at 45–46, 355 U.S. 41, 78 S.Ct. at 102, 2 L.Ed.2d 80. Accordingly, defendants' motion to dismiss count four of plaintiff's complaint is denied.

Next, the Court will analyze whether count three of plaintiff's complaint states a claim upon which relief can be granted. Count three alleges breach of contract against all three individual defendants based on alleged violations of the rights to intellectual property provision contained within said defendants' Employee Agreements. Said provision provides as follows:

> The Employee will disclose promptly and fully to Bone Care all inventions, improvements, or discoveries made or conceived by the employee, solely or jointly with others, in the course of such employment or with the use of Bone Care's time, material, or facilities, or related to or suggested by the business or investigations of Bone Care, or of the companies it owns or controls at the time of such inventions. The employee will assign to Bone Care all rights, title, and interest in any inventions, improvements or discoveries that he ... may conceive of or first actually reduce to practice during his ... employment with the company....
>
> Since Employee is to assign to Bone Care inventions which he ... may conceive or first actually reduce to practice while in the employ of the company, he ... will list at the end of this Agreement all those inventions which are owned by the Employee at this time and which should be brought to the attention of the Company to avoid future misunderstandings as to ownership....

Defendants argue this provision is invalid because it is overbroad and unreasonable. Additionally, defendants argue the liquidated damages clause contained within the individual defendants' Employee Agreements is penal which renders it invalid and because the rights to intellectual property provision is indivisible from said damage clause it is invalid as well. However, Wisconsin courts have determined that an unreasonable liquidated damages clause is not a restraint against competition which makes it divisible from the balance of the covenant. Additionally, the Court does

not possess enough information at this stage in the proceedings to conclude that the rights to intellectual property provision is either an unreasonable restraint on trade or unenforceable as a matter of law. Accordingly, defendants' motion to dismiss count three of plaintiff's complaint is denied.

In *Fields Found., Ltd. v. Christensen*, 103 Wis.2d 465, 309 N.W.2d 125 (Wis.Ct. App.1981) the employment contract at issue contained a penal liquidated damages clause. *Id.* at 475, 309 N.W.2d at 130–131. The defendant in *Fields Found., Ltd.*, argued (as defendants do here) that the entire covenant was unenforceable because it contained such an unreasonable penal clause. *Id.* at 476, 309 N.W.2d at 131. However, the Court held that a liquidated damages clause in a covenant not to compete pertains to "the consequences flowing from prohibited competition and is not itself an occupational restriction." *Id.* at 477, 309 N.W.2d at 132. Accordingly, the Court concluded that the unenforceability of a liquidated damages clause does not affect the balance of the covenant. *Id.* at 477, 309 N.W.2d at 131. As such, even were the Court to determine that the liquidated damages clause contained within the individual defendants' Employee Agreements is punitive such a conclusion would be irrelevant for the purpose of the present motion because Wisconsin law provides that such clauses do not affect the balance of the covenants. Accordingly, the presence of the liquidated damages clause does not affect the validity of the rights to intellectual property provisions contained within the individual defendants' Employee Agreements.

 Additionally, defendants argue that the rights to intellectual property provision is overbroad and unreasonable. Defendants cite *Guth v. Minn. Mining & Mfg. Co.*, 72 F.2d 385 (7th Cir.1934) in support of their position that said provision is un-

enforceable as a matter of law. However, *Guth* is distinguishable from the present action. First, the assignment provision at issue in *Guth* obligated defendant to assign not only his rights to inventions conceived during his period of employment but also his rights to inventions conceived for a limitless period of time after his employment terminated. *Id.* at 387. However, the rights to intellectual property provision at issue here is not as broad as it does not require the individual defendants to assign rights to inventions conceived during subsequent employment. Additionally, the court in *Guth* expressly held that facts peculiar to its case mandated a determination that the provision was contrary to public policy. *Id.* at 388. The Court cannot read the holding in *Guth* as broadly as defendants wish without knowing all the facts relevant to this action. Accordingly, the Court cannot find that the provision at issue is unreasonable and unenforceable as a matter of law especially in light of the *Guth* court's express recognition that an employer has the right to contract for patentable discoveries made by its employees. *Id.* at 387.

Additionally, defendants failed to demonstrate how the rights to intellectual property provision restricts their mobility which is the public policy underlying Wis. Stat. § 103.465. *Mut. Serv. Cas. Ins. Co.*, at ¶ 6, 242 Wis.2d at 738, 625 N.W.2d at 652 (citation omitted). Were the Court to find that said provision is overbroad because it encompasses all inventions conceived during the individual defendants' employment with plaintiff (regardless of whether such inventions related to their employment) defendants failed to demonstrate how this affects future employment. Later, defendants may be able to demonstrate that such a provision restricts their mobility. However, without such a showing the Court cannot (on a motion to dismiss) find that the rights to intellectual

property provision is indeed an unreasonable restraint of trade under Wis. Stat. § 103.465 and thus unenforceable as a matter of law.

■ Plaintiff's complaint alleges that the individual defendants have applied for one or more patents related to Vitamin D products and uses which upon information and belief are based on inventions, improvements, or discoveries made or conceived by said defendants during the course of their employment with plaintiff. Such allegations state a claim for breach of contract based on alleged violations of the rights to intellectual property provision contained within the individual defendants' Employee Agreements. Accordingly, dismissal of count three is not appropriate. *Conley,* at 45–46, 355 U.S. 41, 78 S.Ct. at 102, 2 L.Ed.2d 80 (1957) (citations omitted).

■ Finally, the Court will analyze whether count five of plaintiff's complaint states a claim upon which relief can be granted. Count five alleges breach of contract against all three individual defendants based on alleged violations of the covenant not to compete contained within said defendants' Employee Agreements. Said provision provides as follows:

> That during the term of his ... employment by Bone Care and for a period of six months after the termination of such employment ... Employee will not directly or indirectly own, operate, manage, consult with regarding matters related to those exposed to during your employment with Bone Care, control, participate in the management or control of, be employed by in a position comparable to that occupied during your employment with Bone Care, or maintain or continue any interest whatsoever in any enterprise that competes with Bone Care in the development and or sale of vitamin D compounds as therapies for certain diseases in competition with Bone Care in pharmaceutical research and development ... without the written consent of Bone Care.... This restriction applies whether termination is voluntary, requested by the employee, or initiated by the employer.

Defendants' attacks on said covenant are multiple. Defendants argue the covenant not to compete is unenforceable as a matter of law because: (1) it is not necessary for plaintiff's protection, (2) it is harsh and oppressive to employees, (3) it does not contain a reasonable territorial limit; and (4) it is contrary to public policy. Additionally, defendants argue the covenant not to compete is indivisible from the non-disclosure agreement which is unenforceable under Wisconsin law because it contains neither temporal nor geographic limitations. However, the "validity of a restrictive covenant is to be established by examination of the particular circumstances which surround it." *Rollins Burdick Hunter of Wis.,* at 468, 304 N.W.2d at 756. The Court does not possess any information concerning the circumstances surrounding the covenant not to compete. Additionally, the Court cannot conclude as a matter of law that the non-disclosure provision is a restraint on trade. Accordingly, the court cannot grant defendants' motion to dismiss count five of plaintiff's complaint.

First, Wisconsin courts have held that a determination whether a covenant not to compete is reasonably necessary for an employer's protection cannot be intelligently made without considering the nature and character of information to which an employee had access during the course of employment, the extent to which such information is vital to an employer's ability to conduct its business, and the extent to which such information could be obtained through other sources. *Id.* at 470, 304 N.W.2d at 757. The Court cannot make such an intelligent determination on a motion to dismiss. Plaintiff's complaint alleges

that the individual defendants were high-level management employees. Accordingly, it is possible they had access to a wide variety of confidential and proprietary information concerning Vitamin D development. As such, the covenant not to compete may be reasonably necessary for plaintiff's protection because "what may be unreasonable in one instance may be very reasonable in another." *Id.* at 468, 304 N.W.2d at 756. However, such a determination does not lend itself to a motion to dismiss.

Additionally, Wisconsin courts have held that a determination concerning whether a restraint is harsh or oppressive to an employee cannot be made without considering "the extent to which the restraint on competition actually inhibits the employee's ability to pursue a livelihood in that enterprise, as well as the particular skills, abilities, and experience of the employee sought to be restrained." *Id.* at 470, 304 N.W.2d at 757. The Court is not privy to such information in connection with defendants' motion to dismiss. Accordingly, the Court cannot conclude that as a matter of law the covenant not to compete is harsh or oppressive to employees.

Next, concerning defendants' territorial limitation argument, Wisconsin courts have held that a territorial limitation need not be expressed in geographic terms as an absolute prerequisite to a valid and enforceable agreement. *Id.* at 467, 304 N.W.2d at 755. The covenant not to compete at issue restricts employees from competing in the area of pharmaceutical research and development. This may "more closely approximate [ ] the area of the employer's vulnerability to unfair competition by a former employee." *Farm*

Credit Servs. of N. Cent. Wis., ACA v. *Wysocki*, 2001 WI 51, ¶ 15, 243 Wis.2d 305, 316, 627 N.W.2d 444, 449 (internal quotation marks and citation omitted). Accordingly, the Court cannot conclude that as a matter of law the absence of an express geographic territorial limitation renders the covenant not to compete invalid and unenforceable.[4]

■ Finally, the Court cannot conclude that as a matter of law the non-disclosure agreement contained within the individual defendants Employee Agreements is a restraint on trade. In *Sysco Food Servs. of E. Wis., LLC v. Ziccarelli*, 445 F.Supp.2d 1039 (E.D.Wis.2006)(applying Wisconsin law), a case relied on by defendants, the Court held that a confidentiality covenant which prohibited defendants from using information about plaintiff's customers in order to compete against it was a restraint on trade because it governed similar types of activities as would a covenant not to compete and it served to restrict competition from plaintiff's former employees. *Id.* at 1054. However, the non-disclosure agreement at issue states in relevant part as follows:

> That during the term of employment with Bone Care and thereafter, Employee will not ... disclose or authorize or permit anyone under his or her direction to disclose to anyone not properly entitled thereto ...

Said provision does not contain the use restriction which the Court in *Sysco Food Servs. of E. Wis., LLC* found to be outcome determinative and defendants failed to demonstrate how their mobility is affected by such a provision. In the end, the non-disclosure provision may be a restraint on trade.[5] However, without a showing as

---

4. In light of the Court's findings concerning whether the covenant not to compete is reasonably necessary for plaintiff's protection, is harsh or oppressive to employees, and reasonable as to territorial limitation the Court like- wise cannot so find as a matter of law that said covenant is against public policy.

5. If the non-disclosure provision is found to be a restraint on trade plaintiff bears a heavy

to how such a provision affects the individual defendants' mobility the Court cannot determine that as a matter of law it is subject to the requirements of Wis. Stat. § 103.465. Accordingly, defendants' motion to dismiss count five is denied.

## C. Defendants' Motion to Dismiss Counts Six through Eight of Plaintiff's Amended Complaint[6]

Defendants argue their motion to dismiss plaintiff's tort claims should be granted because said claims are based on the alleged misappropriation of plaintiff's purported trade secrets. Accordingly, defendants argue these tort claims are preempted by the Wisconsin Uniform Trade Secrets Act.

The Wisconsin Uniform Trade Secret Act "displaces conflicting tort law, restitutionary law and any other law of this state providing a civil remedy for misappropriation of a trade secret." Wis. Stat. § 134.90(6)(a). Expressly excluded from such displacement is "any civil remedy not based upon misappropriation of a trade secret." Wis. Stat. § 134.90(6)(b)(2). Accordingly, the Wisconsin Supreme Court has determined that civil tort claims which require the use of a statutorily-defined trade secret are abrogated by Wis. Stat. § 134.90(6)(b)(2) while civil tort claims alleging misuse of non-trade secret confidential information remain available under the directive of said statute. *Burbank Grease Servs., LLC v. Sokolowski,* 2006 WI 103, ¶ 23, 717 N.W.2d 781, 789–790.

The definition of trade secret is found in Wis. Stat. § 134.90(1)(c) which provides as follows:

(c) "Trade Secret" means information, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:

1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

*Minuteman, Inc. v. L.D. Alexander,* 147 Wis.2d 842, 852, 434 N.W.2d 773, 777 (1989) *(citing* Wis. Stat. § 134.90(1)(c)). Accordingly, any civil tort claim not grounded in a trade secret, *as defined in the statute,* remains available. *Burbank Grease Servs., LLC,* at ¶ 33, 717 N.W.2d at 793–794 (emphasis in original). Defendants' motion to dismiss plaintiff's tort claims must be denied because plaintiff's complaint states civil tort claims which if proven may not be grounded in a trade secret as said term is defined under the statute.

Count six of plaintiff's complaint alleges breach of duty of loyalty against defendants Bishop, Crawford, and Messner. Said count alleges in relevant part as follows:

... [The individual defendants] each breached their duties by engaging in competing, self-dealing activities, while employed, and by misappropriating [plaintiff's] confidential or proprietary non-trade secret information in order to

---

burden of proving it is reasonable considering it has no time limitation and it applies to information which is not considered a trade secret.

**6.** Defendants moved to dismiss counts five through seven of plaintiff's original complaint

which were plaintiff's tort claims. However, counts six through eight of plaintiff's amended complaint allege tort claims. Accordingly, the Court will apply defendants' arguments contained within their motion to dismiss to counts six through eight of plaintiff's amended complaint.

form what Bishop called a 'better Vitamin D company than Bone Care' in an effort to compete with [plaintiff.] ... These competing, self-dealing activities include, but are not limited to, (1) meeting with each other and their attorney to discuss plans to develop a new company that would comp[ ]ete with [plaintiff]; (2) using time in Boston, Massachusetts, during which they were supposed to be working on the integration of Bone Care and [plaintiff,] to meet with potential supporters or advisors of the company they intended to form ...; and (3) misappropriating [plaintiff's] business and marketing plans, contact information for "Key opinion leaders" in the Vitamin D industry, equipment, electronic files, and other materials....

Additionally, count seven of plaintiff's complaint alleges usurpation of corporate opportunity against defendant Bishop. Said count alleges in relevant part as follows:

... Bishop's fiduciary duty of loyalty included, among other things, the obligation to refrain from using his position as a corporate insider to gain personally from business opportunities belonging to Bone Care. Bone Care had an opportunity to develop and market Vitamin D products that were based upon proprietary development plans, some of which may or may not be trade secrets. Bone Care had both an interest and an expectancy in its ability to pursue this opportunity.... Bishop has seized this opportunity for his own benefit ... and, in doing so, has breached his fiduciary duty of loyalty to Bone Care....

Finally, count eight of plaintiff's complaint alleges conspiracy against defendants Bishop, Crawford, and Messner. Said count alleges in relevant part as follows:

... [D]efendants Bishop, Crawford, and Messner ... formed a conspiracy to breach their duties to [plaintiff,] misappropriate confidential and/or proprietary, non-trade secret information, and unjustly retain the benefits of possessing, selling, and otherwise using [plaintiff's] confidential, non-trade secret information and materials .... defendants Bishop, Crawford, and Messner did, in furtherance of their unlawful conspiracy, establish Proventiv for the purpose of using and exploiting confidential, non-trade secret information belonging to Bone Care .... [said] defendants ... used and exploited Bone Care's confidential, non-trade secret information in competition with Bone Care ....[said] defendants ... did, in furtherance of their unlawful conspiracy, disclose Bone Care's confidential, non-trade secret information to Cytochroma....

Taking plaintiff's allegations as true (which the Court must at this stage) counts six through eight of plaintiff's complaint expressly allege misuse and exploitation of confidential or proprietary non-trade secret information and the Wisconsin Supreme Court has determined that these types of claims remain available under Wis. Stat. § 134.90. *Id.* at ¶ 23, 717 N.W.2d 781, 789–790.

The determination of what constitutes a statutorily defined trade secret under Wis. Stat. § 134.90(1)(c) is necessarily a fact-intensive inquiry considering factors such as: (1) the extent to which the information is known outside the business, (2) the extent to which it is known by employees and others involved in the business, (3) the extent of measures taken to guard the secrecy of the information, (4) the value of the information to the business and its competitors, (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Minuteman, Inc.,* at 851, 434 N.W.2d at 777.

When ruling on defendants' motion to dismiss the Court is limited to an analysis of plaintiff's complaint and the Employee Agreements which were attached to defendants' motion. *See Hill*, at 251 (citation omitted); *188 LLC* at 735 (citation omitted). At this stage, the Court does not possess sufficient factual information to conclude that the allegedly misused and exploited information, which serves as a factual basis for counts six through eight of plaintiff's complaint, constitutes a trade secret. In the end, it may. However, such an inquiry is better addressed on summary judgment where both parties have the opportunity to develop the record and submit evidence to the Court in support of their respective positions. Accordingly, defendants' motion to dismiss counts six through eight of plaintiff's complaint is denied.

## ORDER

IT IS ORDERED that defendants' motions to dismiss counts three through eight of plaintiff's complaint are DENIED.